UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                        Case No. 19-12821-BKC-AJC

MAGNUM CONSTRUCTION MANAGEMENT, LLC,        Chapter 11
f/k/a MUNILLA CONSTRUCTION MANAGEMENT,
LLC[1],

　　　　Debtor.
_____/


**CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY
MAGNUM CONSTRUCTION MANAGEMENT, LLC, f/k/a
<u>MUNILLA CONSTRUCTION MANAGEMENT, LLC</u>**


　　　　　　　　　　　　　　**BERGER SINGERMAN, LLP**
　　　　　　　　　　　　　　Jordi Guso, Esq.
　　　　　　　　　　　　　　Florida Bar No. 863580
　　　　　　　　　　　　　　JGuso@bergersingerman.com
　　　　　　　　　　　　　　Paul A. Avron
　　　　　　　　　　　　　　Florida Bar No. 0050814
　　　　　　　　　　　　　　pavron@bergersingerman.com
　　　　　　　　　　　　　　1450 Brickell Avenue, Suite 1900
　　　　　　　　　　　　　　Miami, Florida  33131
　　　　　　　　　　　　　　Telephone:  (305) 755-9500
　　　　　　　　　　　　　　Telecopier: (305)714-4340

　　　　　　　　　　　　　　*Attorneys for Debtor and Debtor-in-Possession.*


Dated:  March 4, 2019

---

[1] The Debtor's address is 6201 SW 70th Street, 1st Floor, Miami, FL 33143.  The last four digits of the Debtor's federal tax identification number are 3403.

8696514

# TABLE OF CONTENTS

**Page**

**ARTICLE I.    DEFINED TERMS AND RULES OF INTERPRETATION** .................... 2

    A.    Defined Terms ................................................................................ 2

    B.    Rules of Interpretation ..................................................... 14

    C.    Exhibits ...................................................................... 15

**ARTICLE II.    ADMINISTRATIVE AND PRIORITY CLAIMS** .................................. 15

    A.    Administrative Claims in General ...................................... 15

    B.    BHSI DIP Loan Claim ...................................................... 15

    C.    Travelers DIP Loan Claim ............................................... 16

    D.    Bank of America Credit Card Financing Claim ..................... 16

    E.    Professional Compensation and Reimbursement Claims ......... 16

    F.    Priority Tax Claims ......................................................... 16

    G.    Statutory Fees ................................................................ 17

**ARTICLE III.    CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS** ...................................................................... 17

    A.    Summary ..................................................................... 17

    B.    Classification and Treatment of Claims and Equity Interests ........... 18

**ARTICLE IV.    ACCEPTANCE, REJECTION, AMENDMENT AND REVOCATION OR WITHDRAWAL OF THE PLAN** .......................... 24

    A.    Classes Entitled to Vote .................................................. 24

    B.    Acceptance by Class of Claims .......................................... 25

    C.    Nonconsensual Confirmation ........................................... 25

    D.    Revocation or Withdrawal; No Admissions ......................... 25

    E.    Amendment of Plan Documents ........................................ 25

    F.    Special Provision Governing Unimpaired Claims ................. 26

**ARTICLE V.    MEANS FOR IMPLEMENTATION OF THE PLAN** ............................ 26

    A.    Source of Funding for Plan Distributions ........................... 26

    B.    Section 1146 Exemption .................................................. 26

    C.    Travelers Bonded Contracts; Release of Travelers ............... 27

    D.    BHSI Bonded Contracts; Release of BSHI ........................... 27

**TABLE OF CONTENTS**
**(continued)**

**Page**

| | | |
|---|---|---|
| E. | Corporate Action | 27 |
| F. | Vesting of Assets in the Reorganized Debtor | 28 |
| G. | Post-Confirmation Cash Management. | 28 |
| H. | Appointment of Plan Administrator | 28 |
| I. | Powers and Obligations of the Plan Administrator | 28 |
| J. | Engagement of Post Confirmation Professionals and Compensation to Plan Administrator and Post Confirmation Professionals | 29 |
| K. | Bond | 29 |
| L. | Resignation, Death or Removal of the Plan Administrator | 29 |
| M. | Distributions | 30 |
| N. | Surrender and Cancellation of Notes, Instruments, Certificates and Other Documents Evidencing Claims | 30 |
| O. | Cancellation of Equity Interests | 30 |
| P. | Continued Corporate Existence of the Reorganized Debtor | 30 |
| Q. | Post-Confirmation Accounts | 31 |
| R. | Managers of the Reorganized Debtor | 31 |
| S. | Effectuating Documents & Further Transactions | 31 |
| T. | Section 1145 Determination | 31 |
| U. | Preservation of Causes of Action | 32 |
| V. | Prosecution and Settlement of Causes of Action and Available Avoidance Actions | 33 |
| W. | Automatic Stay | 33 |
| X. | Closing of the Chapter 11 Case | 33 |
| ARTICLE VI. | PROVISIONS GOVERNING DISTRIBUTIONS | 33 |
| A. | Manner of Cash Payments Under the Plan | 33 |
| B. | Entity Making Distributions | 34 |
| C. | Distribution Dates | 34 |
| D. | Record Date for Distributions | 34 |
| E. | Delivery of Distributions | 34 |
| F. | Undeliverable and Unclaimed Distributions | 34 |

-ii-

# TABLE OF CONTENTS
## (continued)

**Page**

G.     Compliance with Tax Requirements ....................................................... 35

H.     No Payments of Fractional Dollars ...................................................... 36

I.      Interest on Claims ................................................................................ 36

J.      No Distribution in Excess of Allowed Amount of Claim ................... 36

K.     Setoff and Recoupment ....................................................................... 36

L.      De Minimis Distributions; Charitable Donation ................................ 37

M.    United States Trustee Fees .................................................................. 37

N.     Withholding from Distributions ........................................................... 37

O.     Distributions in Satisfaction; Allocation ........................................... 38

P.      No Distributions on Late-Filed Claims .............................................. 38

**ARTICLE VII.    DISPUTED CLAIMS ........................................................... 38**

A.     Disputed Claims Reserve .................................................................... 38

B.     Resolution of Disputed Claims ........................................................... 38

C.     Objection Deadline ............................................................................. 39

D.     Estimation of Claims .......................................................................... 39

E.     No Distributions Pending Allowance ................................................. 39

F.      Resolution of Claims ........................................................................... 39

**ARTICLE VIII.   TREATMENT OF EXECUTORY CONTRACTS AND
                UNEXPIRED LEASES ..................................................... 39**

A.     General Treatment:  Rejected if not Previously Assumed ................... 40

B.     Bar to Claims Arising from Rejection, Termination or Expiration .................... 40

C.     Assumption of Executory Contracts and Unexpired Leases ............... 40

D.     Indemnification and Reimbursement. ................................................. 42

**ARTICLE IX.    CONDITIONS PRECEDENT TO CONFIRMATION AND THE
                EFFECTIVE DATE ........................................................... 42**

A.     Conditions Precedent to the Effective Date. ...................................... 42

B.     Waiver .................................................................................................. 43

**ARTICLE X.     EFFECT OF CONFIRMATION; INDEMNIFICATION,
                RELEASE, INJUNCTIVE AND RELATED PROVISIONS .................. 43**

A.     Compromise and Settlement ............................................................... 43

-iii-

**TABLE OF CONTENTS**
(continued)

Page

| | | |
|---|---|---|
| B. | Vesting of Assets | 43 |
| C. | Title to Assets; Discharge of Liability | 44 |
| D. | Binding Effect | 44 |
| E. | Discharge of Claims | 44 |
| F. | Discharge of the Debtor | 44 |
| G. | Releases | 45 |
| H. | Exculpation | 47 |
| I. | Government Carve-Out | 47 |
| J. | Surety Carve-Out | 47 |
| K. | Limitations on Exculpation and Releases | 48 |
| L. | Injunction | 48 |
| M. | Release of Liens | 49 |

**ARTICLE XI.    RETENTION OF JURISDICTION** ..................................................... **49**

**ARTICLE XII.    MISCELLANEOUS PROVISIONS** ..................................................... **51**

| | | |
|---|---|---|
| A. | Liquidation Event | 51 |
| B. | Modification of Plan | 51 |
| C. | Revocation of Plan | 51 |
| D. | Binding Effect | 51 |
| E. | Successors and Assigns | 52 |
| F. | Governing Law | 52 |
| G. | Reservation of Rights | 52 |
| H. | Title 1146 Exemption | 52 |
| I. | Section 1125(e) Good Faith Compliance | 52 |
| J. | Further Assurances | 52 |
| K. | Service of Documents | 53 |
| L. | Filing of Additional Documents | 53 |
| M. | No Stay of Confirmation Order | 53 |
| N. | Bankruptcy Rule 9019 Request; Impact | 53 |

8696514

PLAN OF REORGANIZATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Magnum Construction Management, LLC, f/k/a Munilla Construction Management, LLC ("Debtor") proposes this *Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*[2] (and including all Plan Documents and other attachments hereto, as any of the same may be amended from time to time, all of which are incorporated herein by reference and are a part of, the "Plan"), pursuant to the provisions of chapter 11 of the Bankruptcy Code (as defined in Article I.A herein ("Defined Terms")).

For a discussion of the Debtor's history, business, operations, assets and liabilities, for a summary and analysis of the Plan, preservation of Causes of Action, risk factors, liquidation analysis, tax implications and alternatives to the Plan, reference should be made to the *Disclosure Statement for Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, dated March _____, 2019, as such disclosure statement may be amended, modified or supplemented (the "Disclosure Statement").

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3018 AND IN THIS PLAN, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

## ARTICLE I.
## DEFINED TERMS AND RULES OF INTERPRETATION

### A.    Defined Terms

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

(1)    "*Administrative Claims*" means: (A) Claims that have been timely filed before the date provided by any other separate order of the Bankruptcy Court, for costs and expenses of administration under sections 365(d)(3), 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation: the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the businesses of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); and (B) the actual and necessary costs and expenses incurred in the ordinary course by the Debtor after the Petition Date of preserving the Estate that are entitled to priority under sections 365(d)(3), 503(b) and/or 507(a)(2) of the Bankruptcy Code.  Any pre-confirmation fees or charges assessed against the Estate of the Debtor under section 1930 of chapter 123 of title 28

---

[2]  All capitalized terms not otherwise defined herein shall be subject to the definition of such capitalized terms in Article I hereof.

1351430

8696514

of the United States Code are excluded from the definition of Administrative Claim and shall be paid in accordance with Article VI.M ("United States Trustee Fees") of this Plan. Notwithstanding anything to the contrary herein, the filing of an Administrative Claim shall not be required in order to receive payment for any tax liability described in sections 503(b)(1)(B) and (C) in accordance with section 503(b)(1)(D) of the Bankruptcy Code.

(2)     "*Administrative Expense Advance*" means DIP Loan proceeds in the aggregate advanced by each of BHSI and Travelers to pay: (a) the fees and expenses due to the professionals retained by the Debtor and any statutory committee through the occurrence of an Event of Default under the BHSI DIP Documents or the Travelers DIP Loan Documents, up to the amount set forth in the Budget for each such professional; (b) fees due to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) through the earlier of the Effective Date of the Plan or a default under the Travelers DIP Documents or the BHSI DIP Loan Documents, up to the amount set forth in the Budget; and (c) fees due the Clerk of the Court.

(3)     "*Administrative Expense Escrow*" means the escrow account into which the Administrative Expense Advance is paid.

(4)     "*Affiliate*" means, any Person that is an "affiliate" of the Debtor within the meaning of section 101(2) of the Bankruptcy Code.

(5)     "*Allowed*" means, with respect to any Claim against the Debtor, except as otherwise provided herein: (a) a Claim that has been scheduled by the Debtor in its Schedules filed in the Chapter 11 Cases as other than disputed, contingent or unliquidated and as to which the Debtor or other parties-in-interest have not filed an objection by the Claims Objection Bar Date; (b) a Claim filed in the Chapter 11 Case and that either is not Disputed or has been allowed by a Final Order; (c) a Claim allowed under the Travelers DIP Loan Order or the BHSI DIP Loan Order; or (d) a Claim filed in the Chapter 11 Case that is allowed: (i) in any stipulation of amount and nature of Claim executed prior to the Effective Date and approved by the Bankruptcy Court; (ii) in any stipulation or written agreement with Debtor of the amount and nature of the Claim executed on or after the Effective Date; or (iii) in or pursuant to any contract, instrument or other agreement entered into or assumed in connection herewith; (d) a Claim that is allowed pursuant to the terms of this Plan; or (e) a Disputed Claim that the Debtor ultimately determines will not be objected to (such claim being deemed Allowed at the time such determination is made).

(6)     "*Available Cash*" means Cash in the Debtor's possession on the Effective Date and the net proceeds from the continued operations of the Debtor's business, subject to the terms of the DIP Financing.

(7)     "Available Avoidance Actions" means the Avoidance Actions which are not barred, released or prohibited by the BSHI DIP Documents or the Travelers DIP Documents, and which shall vest in the Plan Administrator on the Effective Date.

-3-

(8)　　"*Avoidance Actions*" means a Cause of Action of the Debtor or its Estate, including without limitation, any action under sections 502, 510, 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 and 724(a) of the Bankruptcy Code (other than those which are released or dismissed as part of and pursuant to the Plan or any previous Order of the Bankruptcy Court), including the Debtor's rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other direct or indirect claim of any kind whatsoever, whenever and wherever arising or asserted.

(9)　　"*Bank of America Collateral*" means all collateral in which Bank of America held a perfected security interest as of the Petition Date pursuant to the Bank of America Security Agreement.

(10)　　"*Bank of America Equipment Loan*" means the loan evidenced by the Bank of America Equipment Loan Agreement in the amount of $4,125,000, which loan has been transferred to and is held by Travelers.

(11)　　"*Bank of America Equipment Loan Agreement*" means the Loan Agreement dated as of May 1, 2018 between the Debtor, as borrower, and Bank of America, as lender, and all other documents executed and delivered in connection therewith.

(12)　　"*Bank of America Line of Credit Loan*" means the loan evidenced by the Bank of America Line of Credit Loan Agreement in the amount of $3,013,200.60, which loan has been transferred to and is held by Travelers.

(13)　　"*Bank of America Line of Credit Loan Agreement*" means the Loan Agreement dated as of May 1, 2018 between the Debtor, as borrower, and Bank of America, and all other documents executed and delivered in connection therewith.

(14)　　"*Bank of America Security Agreement*" means the Amended and Restated Security Agreement dated January 27, 2016 between Debtor and Bank of America, under which Bank of America has a perfected security interest in the Bank of America Collateral.

(15)　　"*Bankruptcy Code*" means Articles 101 *et seq.* of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

(16)　　"*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Florida, Miami Division.

(17)　　"*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, the Local Rules of the Bankruptcy Court, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Cases and as amended from time to time.

(18)　　"*Bar Date Order*" means that certain *"Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines"* dated as of _____, 2019 [ECF No. _____],

establishing _____, 2019 as the general bar date for filing proofs of Claim in the Chapter 11 Case, with only those exceptions permitted thereby.

(19)     "*BHSI*" means Berkshire Hathaway Specialty Insurance Company, its successors and assigns.

(20)     "*BHSI Agreements*" means the BHSI DIP Loan Documents and the BHSI Pre-Petition Agreements.

(21)     "*BHSI Bonds*" means any surety bonds, guarantees, undertakings, and/or contractual obligations, including renewals and extensions thereof, and including bonds and undertakings for which BHSI has obligations as a result of an asset purchase, acquisition, or like transaction having heretofore been and may hereafter be required by, for, or on behalf of Debtor under the BHSI Agreements.

(22)     "*BHSI Bonded Contracts*" means an agreement of Debtor for which BHSI executes a Bond, procures a Bond, assumed the obligations of a Bond, or has guaranteed performance including, but not limited to, those contracts identified on the attached **Exhibit 1** to this Plan.

(23)     "*BHSI Claims*" means the claims and causes of action of the Debtor for amounts due to the Debtor for materials provided to or work performed on the BHSI Bonded Contracts.

(24)     "*BHSI Collateral*" means the assets and property of the Debtor provided to BHSI as collateral pursuant to the BHSI Agreements, which includes substantially all of the Debtor's assets.

(25)     "*BHSI DIP Loan*" means the secured post-petition loan advanced to the Debtor by BHSI.

(26)     "*BHSI DIP Loan Documents*" means, collectively, the (i) BHSI DIP Loan Agreement; (ii) the Promissory Note dated [XXXX], in the amount of [XXXX]; (iii) the Mortgage; and (iv) all other documents executed and delivered by the Debtor in favor of BHSI in connection with the issuance of the BHSI DIP Loan.

(27)     "*BHSI DIP Loan Claim*" means the Administrative Claim on account of the Secured Post-Petition Loan advanced by BHSI to the Debtor pursuant to the BHSI DIP Loan Order.

(28)     "BHSI DIP Loan Order" means the Order Authorizing Secured Post-Petition Financing and Granting Adequate Protection entered by the Bankruptcy Court on _____, 2019 [ECF No._____].

(29)     "*BHSI DIP Loan Agreement*" means the Loan and Security Agreement dated March __, 2019 between the Debtor, as borrower, and BHSI, as lender.

-5-

(30)    "*BHSI Pre-Petition Agreements*" means the: (i) General Indemnity Agreement dated October 31, 2016; (ii) BHSI Trust Financing Agreement; (iii) Consolidated and Renewal Promissory Note dated January XXXX, 2018; (iv) Equipment Security Agreement dated November XXXX, 2018; (v) the BHSI Bonds; (vi) Mortgage and Security Agreement dated as of July 25, 2018, executed by Mortgagor in favor of DIP Lender, as amended by that Notice of Future Advance and Mortgage Modification Agreement dated as of January XXXX, 2019, and (vii) all other documents executed and delivered by the Debtor in favor of BHSI in connection with the issuance of BHSI Bonds on the BHSI Bonded Contacts.

(31)    "*BHSI Pre-Petition Secured Claim*" means the allowed secured claim of BHSI that is evidenced by the BHSI Pre-Petition Agreements.

(32)    "*BHSI Trust Financing Agreement*" means the Trust, Financing and Collateral Agreement dated as of July 19, 2018, as amended by that First Amendment to Trust, Financing and Collateral Agreement dated January XXXX, 2019.

(33)    "*Books and Records*" means all books and records of such Debtor, including, without limitation, all documents and communications of any kind, whether physical or electronic.

(34)    "*Bridge Claims*" means any Claim arising from or relating to the March 15, 2018 collapse of the Florida International University Pedestrian Bridge, including any Tort Claim.

(35)    "*Budget*" means the budget attached as exhibits to the BHSI DIP Loan Order and Travelers DIP Loan Order.

(36)    "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

(37)    "*Capital Contribution*" means the Real Estate.

(38)    "*Carve Out*" means  (a) fees due the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6); (b) fees due the Clerk of Court; and (c) the Professional Fee Carve Out.

(39)    "*Cash*" means cash and cash equivalents in certified or immediately available U.S. funds, including but not limited to bank deposits, checks and similar items.

(40)    "*Cash Flow*" means the Debtor's or the Reorganized Debtor's, as the case may be, EBITDA.

(41)    "*Causes of Action*" means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of setoff, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and crossclaims against any Person or Entity, based in law or equity, including, without limitation, under the Bankruptcy Code, whether

-6-

direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Effective Date; *provided, however*, that Causes of Action shall exclude Available Avoidance Actions.

(42)    "*Chapter 11 Case*" means the chapter 11 case commenced when the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on the Petition Date.

(43)    "*Claim*" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; or (c) any other claim, as such term is defined in section 101(5) of the Bankruptcy Code.

(44)    "*Claims Objection Bar Date*" means the bar date for objecting to proofs of Claim, which shall be thirty (30) days after the Effective Date; *provided, however*, that the Debtor or Reorganized Debtor or Plan Administrator, as applicable, may seek additional extensions of this date from the Bankruptcy Court, with notice only to those parties entitled to notice in the Chapter 11 Case pursuant to Bankruptcy Rule 2002.  A party requesting to extend the Claims Objection Bar Date may specify which entities may benefit from such an extension.

(45)    "*Class*" means a category of holders of Claims or Equity Interests as set forth in Article III herein and pursuant to section 1122(a) of the Bankruptcy Code.

(46)    "*Confirmation Date*" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

(47)    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

(48)    "*Credit Card Financing*" means the financing provided by Bank of America, N.A. to the Debtor pursuant to the Credit Card Security Agreement.

(49)    "*Credit Card Security Agreement*" means the Security Agreement dated November 13, 2018 between Bank of America, N.A.  and the Debtor.

(50)    "*Creditor*" has the meaning in section 101(10) of the Bankruptcy Code.

(51)    "*Cure*" means a Claim for all unpaid monetary obligations, or adequate assurance of cure or compensation, or other amounts as may be agreed upon by the parties, under an executory contract or unexpired lease (or assumed or assumed and assigned) by any Debtor pursuant to section 365 of the Bankruptcy Code or the Plan.

(52)    "*Cure Claim*" means a Claim for a Cure.

-7-

(53)    "*Debtor*" has the meaning set forth in the preamble hereof, and where applicable, the Estate thereof.

(54)    "*Debtor in Possession*" means the Debtor in its capacity as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

(55)    "*DIP Loans*" means the post-petition loans advanced to the Debtor by (a) Travelers under, and pursuant to, the Travelers DIP Loan Order, and (b) BHSI under, and pursuant to, the BHSI DIP Loan Order.

(56)    "*Disclosure Statement*" has the meaning set forth in the preamble hereof.

(57)    "*Disputed*" means, with respect to any Claim: (a) listed on the Schedules as unliquidated, disputed or contingent, unless a proof of Claim has been filed in a liquidated, non-contingent amount; (b) as to which the Debtor or any other party in interest, has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules; or (c) as otherwise disputed in accordance with applicable bankruptcy or insolvency law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

(58)    "*Disputed Claims Reserve*" means the reserve funds created pursuant to Article VII herein.

(59)    "*Distributions*" means the distributions of Cash to be made in accordance with the Plan.

(60)    "*Distribution Agent*" means the Person or Entity responsible for making Distributions under the Plan, which will be the Reorganized Debtor for all Classes other than Class 6.  Distributions to the holders of Allowed Claims in Class 6 shall be made by the Plan Administrator.

(61)    "*Effective Date*" means the Business Day selected by the Debtor after the Confirmation Date on which the conditions precedent specified in Article IX of this Plan have been either satisfied or waived.  Within two (2) Business days of the Effective Date, the notice of the Effective Date shall be filed in the Bankruptcy Court.

(62)    "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

(63)    "*Equity Interest*" means the interests of any holder of an equity security of any of the Debtor represented by any issued and outstanding shares of common stock or preferred stock, or any membership interest, partnership interest or other instrument evidencing a present ownership interest in any of the Debtor, including any option, warrant, or right, contractual or otherwise, to acquire any such interest.

(64)    "*Estate*" means the Debtor's estate created pursuant to section 541 of the Bankruptcy Code upon the filing of the Chapter 11 Case.

-8-

(65)    "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

(66)    "*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to file an appeal, motion for reconsideration or rehearing, or request for a stay has expired with no appeal, motion for reconsideration or rehearing, or request for a stay having been timely filed.

(67)    "*G&A DIP Loan Proceeds*"  means that portion of the DIP Loans advanced to the Debtor to fund the Debtor's general and administrative expenses.

(68)    "*General Bar Date*" means _____, 2019 as established in the Bar Date Order.

(69)    "*General Unsecured Claims*" means Claims against the Debtor that are not Administrative Claims, Professional Compensation Claims, Priority Tax Claims, Other Priority Claims, Travelers Secured Claim, BHSI Secured Claim, Miscellaneous Secured Claim, Bank of America Line of Credit Loan - Secured Claim, Bank of America Equipment Secured Claim, Bridge Claims, Tort Claims, Subordinate Claims or Equity Interests.

(70)    "*Impaired*" means "*impaired*" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests.

(71)    "*Insider Claims*" means the Claim of any Insider.

(72)    "*Insurance*" means the coverage available under the policies of insurance listed on **Exhibit 2** to this Plan.

(73)    "*Insurer*" means an issuer of  one or more of the policies of Insurance.

(74)    "*Lien*" means any lien, mortgage, charge, security interest, pledge or other encumbrance against or interest in property to secure payment or performance of a claim, debt or litigation.

(75)    "*Liquidation Event*" means (i) any voluntary or involuntary liquidation, dissolution, or winding up of Debtor, (ii) any sale of all or substantially all of the assets of Debtor, and/or (iii) any sale of all or substantially all of the membership or other equity interest of, including, but not limited to, any merger, reorganization, or recapitalization of substantially all of the membership or other equity interest of Debtor.

(76)    "*Net Proceeds*" means the gross proceeds of any claim, demand or cause of action of the Debtor, less the costs and expenses incurred.

(77)    "*New Equity Holder*" means Frigate Group Holdings, LLC, a Florida limited liability company.

-9-

(78)    "*Other Priority Claims*" means Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than Priority Tax Claims.

(79)    "*Person*" means an individual, partnership, corporation, limited liability company, cooperative, trust, estate, unincorporated organization, association, joint venture, government unit or agency or political subdivision thereof or any other form of legal entity or enterprise.

(80)    "*Petition Date*" means February 25, 2019, the date on which the Debtor filed the Chapter 11 Case.

(81)    "*Plan*" has the meaning set forth in the preamble hereof.

(82)    "*Plan Administrator*" means the person appointed by the Confirmation Order to carry out the provisions of the Plan.

(83)    "*Plan Cash*" means $25,000  contributed on the Effective Date by Travelers and BHSI .

(84)    "*Plan Documents*" means all documents that aid in effectuating the Plan, including, without limitation, all addenda, exhibits, schedules, and the Plan Supplement, which documents (as may be amended, modified or supplemented from time to time) shall be in form and substance reasonably acceptable to the Debtor.

(85)    "*Plan Supplement*" means the supplement, if any, to the Plan containing certain documents and forms of documents specified in the Plan each in form and substance reasonably acceptable to the Debtor, which documents and forms shall be filed with the Bankruptcy Court no later than ten (10) days prior to the commencement of the hearing on confirmation of the Plan.

(86)    "*Priority Tax Claims*" means Claims of governmental units of the kind specified in section 507(a)(8) of the Bankruptcy Code.

(87)    "*Pro Rata*" means the proportion (expressed as a percentage) that the amount of a Claim in a particular Class or Classes bears to the aggregate amount of all Claims (including Disputed Claims but excluding disallowed Claims) in such Class or Classes, unless this Plan provides otherwise.

(88)    "*Professional Fee Carve Out*" means following an Event of Default under the Travelers DIP Documents or the BHSI DIP Documents, (a) up to $50,000 in fees and expenses incurred by the Debtor's professionals from and after an Event of Default under the Travelers DIP Documents; and (b) up to $50,000 in fees and expenses incurred by the Debtor's professionals from and after an Event of Default under the BHSI DIP Documents.

(89)    "*Professionals*" means any Person employed in the Chapter 11 Case pursuant to a Final Order in accordance with sections 327, 328 or 1103 of the Bankruptcy Code, and to be

-10-

compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330, 331 or 363 of the Bankruptcy Code.

(90)    "*Real Estate*" means the real property that has been or is pledged as collateral to Travelers, as more particularly described in the Plan Supplement.

(91)    "*Record Date*" means the date that the Disclosure Statement is conditionally approved by the Bankruptcy Court.

(92)    "*Reinstated*" or "*Reinstatement*" means, with respect to any Claim of Interest, the treatment provided for in section 1124 of the Bankruptcy Code.

(93)    "*Released Parties*" means, collectively, BHSI, the Debtor, Travelers and New Equity Owner.

(94)    "*Reorganized Debtor*" means the Debtor, as reorganized as of the Effective Date in accordance with the Plan, and its successors.

(95)    "*Representatives*" means, with regard to an Entity (including the Debtor), any current or former officers, directors, employees, attorneys, Professionals, accountants, investment bankers, financial advisors, consultants, agents and other representatives (including their respective officers, directors, employees, independent contractors, members and professionals).

(96)    "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule to be included in the Plan Supplement and identifying (i) the executory contracts and unexpired leases to be assumed by the Debtor and assigned to the Purchaser; and (ii) the amount of Cure Claims with respect to each executory contract or unexpired lease proposed to be assumed.

(97)    "*Schedules*" mean the schedules of assets and liabilities, schedules of executory contracts and statements of financial affairs filed by the Debtor pursuant to section 521 of the Bankruptcy Code, as may be amended, modified or supplemented from time to time.

(98)    "*Secured Claims*" means Claim(s) against the Debtor that are secured by a Lien on property in which the Estate has an interest, which Liens are valid, perfected and enforceable under applicable law or by reason of a Final Order, or that are subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

(99)    "*Subordinated Claims*" means (a) any Claim of any Person or Entity that is liable with the Debtor on or has secured the Claim of another creditor to the extent that such co-obligor's Claim is for indemnity, contribution, or reimbursement and is not Allowed on or before the Confirmation Date, (b) any Claim for penalties or punitive damages and any other Claim of the type described in section 726(a)(4) of the Bankruptcy Code (and notwithstanding the general

-11-

inapplicability of Chapter 7 of the Bankruptcy Code), including any lien securing such Claim, (c) any Claim subordinated under section 510 of the Bankruptcy Code and any lien securing such Claim, or (d) any Claim subordinated per the terms of this Plan or otherwise by Final Order of the Bankruptcy Court.

(100)   "*Tax Code*" means the United States Internal Revenue Code of 1986, as amended.

(101)   "*Tax Returns*" means all tax returns, reports, certificates, forms or similar statements or documents, including amended tax returns or requests for refunds.

(102)   "Tort Claim" means a civil wrong, other than a breach of contract, for which a remedy may be obtained, usually in the form of damages; a breach of duty that the law imposes on persons who stand in a particular relation to one another.

(103)   "*Travelers*" means Travelers Casualty and Surety Company of America, St. Paul Fire and Marine Company and any of their present or future direct or indirect parent companies, any of the respective or future direct or indirect affiliates or subsidiaries of such companies and parent companies, and/or any co-sureties, fronting companies, and reinsurors, and/or their successors, assigns, parent companies and subsidiaries, whether in existence now or formed hereafter, including any predecessors in interest.

(104)   "*Travelers Agreements*" means, collectively, the Travelers Prepetition Agreements and the Travelers DIP Documents.

(105)   "*Travelers Bonded Contracts*" means an agreement of Debtor, or any other indemnitor under any of the Travelers Agreements, for which Travelers executed a Travelers Bond, procured a Travelers Bond, assumed the obligations of a Travelers Bond, or has guaranteed performance, including, but not limited to, those contracts identified on the attached **Exhibit 3** to this Plan.

(106)   "Travelers Bonds" means any surety bonds, guarantees, undertakings, and/or contractual obligations, including renewals and extensions thereof, and including bonds and undertakings for which Travelers has obligations as a result of an asset purchase, acquisition, or like transaction having heretofore been and may hereafter be required by, for, or on behalf of any one or more of Debtor and any other indemnitors under any of the Travelers Agreements.

(107)   "*Travelers CMS Agreements*" means, collectively: (i) the Trust Agreement dated July 23, 2018, by and among Debtor, Travelers, Mattson Driscoll & Damico LLP, and others, as amended by the First Amendment to Trust Agreement dated as of August 30, 2018; (ii) the Collateral Reimbursement Agreement dated July 23, 2018, by and among Debtors, Travelers, and others, as amended by the First Amendment to Collateral/Reimbursement Agreement dated as of August 30, 2018, and by Second Amendment to Collateral/Reimbursement Agreement dated September 20, 2018; (iii) Collateral Agent Agreement dated as of July 23, 2018, by and among Debtor, Travelers, and U.S. Bank; and (iv) any and all amendments, modifications, replacements, and restatements of any of the foregoing.

-12-

(108)  "*Travelers Collateral*" means the assets of Debtor provided to Travelers as collateral pursuant to the Travelers Agreements, which includes substantially all of the assets of Debtor.

(109)  "*Travelers DIP Documents*" means, collectively, the (i) Loan and Security Agreement; (ii) Promissory Note _____; (iii) _____; and (iv) any and all amendments, modifications, replacements, and restatements of any of the foregoing.

(110)  "*Travelers DIP Loan Claim*" means the superpriority Administrative Claim on account of the funds advanced by Travelers to the Debtor pursuant to the Travelers DIP Documents and the Travelers DIP Loan Order.

(111)  "*Travelers DIP Loan Order*" means the Order Authorizing Secured Post-Petition Financing and Granting Adequate Protection entered by the Bankruptcy Court on _____, 2019 [ECF No. _____].

(112)  "*Travelers DIP Loan Secured Claim*" means the allowed secured claim on account of the funds advanced by Travelers to the Debtor pursuant to the Travelers DIP Documents and the Travelers DIP Loan Order.

(113)  "*Travelers Loan and Security Agreement*" means the Loan and Security Agreement dated as of March ____, 2019, by and between Debtor and Travelers that was approved pursuant to the Travelers DIP Loan Order.

(114)  "*Travelers Prepetition Agreements*" means, collectively, (i) General Agreement of Indemnity dated October 22, 2003, executed by Magnum Construction Management, Corp. (an inactive company converted to Munilla Construction Management, LLC ) (d/b/a M.C.M. Corp.), Advanced Realty Management, Inc., Jorge Munilla, Raul Munilla, Pedro Munilla, Juan Munilla, Madeleine Munilla, Gail Munilla, and Jacquelyn Munilla in favor of Company; as modified by General Agreement of Indemnity Additional Indemnitor Rider dated October 12, 2005, executed by 6201 Corporation of Miami (an inactive company), General Agreement of Indemnity Additional Indemnity Rider dated October 13, 2006, executed by 7501 Medley Civil, LLC and MCM of South Florida, LLC (an active company converted to MCM Corp., (also an inactive company)); General Agreement of Indemnity Additional Indemnitor Rider dated June 3, 2011, executed by Munilla Construction Management, LLC d/b/a MCM; Rider to General Agreement of Indemnity dated September 18, 2012, executed by MCM Global, S.A., Advanced Realty Management, Inc., 7501 Medley Civil, LLC, Munilla Construction Corporation, LLC dba MCM, Jorge Munilla, Pedro Munilla, Juan Munilla, Madeleine Munilla, Gail Munilla, and Jacquelyn Munilla; (ii) General Agreement of Indemnity dated November 3, 2015, executed by Benjamin R. Polote, Sr. and The Polote Corporation, as amended by General Agreement of Indemnity Additional Indemnitor and Limited Liability Rider dated _____, 2016, executed by Debtor; (iii) Documento De Indemnización dated July 29, 2011, executed by MCM Global, S.A.; (iv) any and all other indemnity agreements heretofore or hereafter executed by any of the indemnitors identified in any of the foregoing in favor of Travelers; (v) the Travelers CMS Agreements; (vi) Mortgage and Security Agreement dated as of September 20, 2018,

-13-

executed by 129 Leoni, LLC in favor of Travelers; (vii) Mortgage and Security Agreement dated September 20, 2018, executed by Development Zone Group, Inc. in favor of Travelers; (viii) Demand Promissory Note dated as of September 20, 2018, in the original principle amount of Fourteen Million Five Hundred Fifty-Two Thousand Seven Hundred Seventy-Five 70/100 Dollars ($14,552,775.70), executed by Debtor and others, as the makers, in favor of Travelers; (ix) Travelers Bonds; and (x) any and all amendments, modifications, replacements, and restatements of any of the foregoing.

(115) "*Travelers Prepetition Secured Claim*" means the allowed secured claim of Travelers that is evidenced by the Travelers Agreements.

(116) "*U.S. Trustee*" means the United States Trustee appointed under Article 591 of title 28 of the United States Code to serve in the Southern District of Florida.

(117) "*Unimpaired*" means not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests.

### B.    Rules of Interpretation

(i)    For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (b) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words ''herein,'' "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

(ii)    The provisions of Federal Rule of Bankruptcy Procedure 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

(iii)    All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

-14-

### C.      Exhibits

All exhibits and schedules, if any, to the Plan are incorporated into and are part of the Plan as if set forth herein.  All exhibits and schedules to the Plan, shall be filed with the Clerk of the Bankruptcy Court not later than three (3) days prior to the deadline set by the Bankruptcy Court to vote to accept or reject the Plan.  Such exhibits may be inspected in the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court. Holders of Claims or Equity Interests may also obtain a copy of such exhibits, once filed, from the Debtor's counsel by a written request sent to the following address:

Berger Singerman LLP
1450 Brickell Avenue
Suite 1900
Miami, FL 33131
Phone: 305-755-9500
Facsimile: 305-714-4340
ATTN: Jordi Guso, Esquire
jguso@bergersingerman.com

### ARTICLE II.
### ADMINISTRATIVE AND PRIORITY CLAIMS

### A.      Administrative Claims in General

The Debtor shall pay each holder of an Allowed Administrative Claim (other than the BHSI DIP Loan Claim and the Travelers DIP Loan Claim), in satisfaction of such Allowed Administrative Claim, the full unpaid amount of such Allowed Administrative Claim in Cash: (1) on the Effective Date or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (2) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (3) at such time and upon such terms as may be agreed upon by such holder and the Debtor; or (4) at such time and upon such terms as set forth in an order of the Bankruptcy Court; *provided, however*, that any Claim seeking administrative expense status included as a part of a proof of claim filed in the Chapter 11 Case shall not qualify as an Administrative Claim.

### B.      BHSI DIP Loan Claim

The BHSI DIP Loan Claim shall be treated in accordance with the treatment of Class 3A claimants.  All obligations of the Debtor under the BHSI DIP Documents and the BHSI Trust Financing Agreement shall be assumed by and be obligations of the Reorganized Debtor. BHSI shall retain all post-petition liens securing the BHSI DIP Loan Claim, including its unimpaired first-priority lien against the BHSI Bonded Contracts.  Any and all rights of BHSI relating to the BHSI Bonded Contracts, including equitable subrogation rights, are fully preserved and

-15-

unimpaired.    The BHSI DIP Loan Claim shall be deemed an Allowed super-priority administrative claim for the full amount due and owing under the BHSI DIP Loan Documents and shall not be subject to dispute as to its amount or priority by any party.

### C.        Travelers DIP Loan Claim

The Travelers DIP Loan Claim shall be treated in accordance with the treatment of Class 2A Claims.  The Travelers DIP Loan Claim shall be unimpaired and all obligations of the Debtor under the DIP Documents and the Cash Management Documents shall be assumed by and shall be obligations of the Reorganized Debtor.  All rights of Travelers relating to the Travelers Bonded Contracts, including equitable subrogation rights, are fully preserved and unimpaired. The Travelers DIP Loan Claim shall be an allowed super-priority administrative claim to the full amount due and owing to Travelers under the Travelers DIP Documents.  Travelers shall retain, unimpaired, all post-petition liens securing the obligations under the Travelers DIP Documents.

### D.        Bank of America Credit Card Financing Claim

All obligations of the Debtor under the Credit Card Security Agreement shall be assumed by and be obligations of the Reorganized Debtor. Bank of America, N.A. shall retain its liens under the Credit Card Security Agreement until the Credit Card Financing has been repaid in full, in cash.

### E.        Professional Compensation and Reimbursement Claims

On or prior to the deadline set by the Bankruptcy Court for Professionals to file final fee applications, each Professional shall file with the Bankruptcy Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Confirmation Hearing.  The Debtor shall pay the Allowed Claims of each Professional up to the amount in the Administrative Expense Escrow in accordance with the Orders of the Bankruptcy Court. From and after the Confirmation Date until the Effective Date, the Debtor, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, shall pay the reasonable fees and necessary and documented expenses of the Professionals during such period, up to the amount in the Administrative Expense Escrow. The Administrative Expense Escrow shall be funded through the Administrative Expense Advances to be made by Travelers and BHSI in accordance with, and subject to, the Travelers DIP Documents and the BHSI DIP Loan Documents, respectively.  Notwithstanding the foregoing, in the event of a default under the Travelers DIP Documents or the BHSI DIP Loan Documents, any Administrative Expense Advances after such default shall be limited the Professional Fee Carve Out.

### F.        Priority Tax Claims

The Debtor shall pay each holder of an Allowed Priority Tax Claim, in satisfaction of such Allowed Priority Tax Claim, the full unpaid amount of such Allowed Priority Tax Claim in Cash, on the later of (i) the Effective Date, (ii) the date such Allowed Priority Tax Claim becomes Allowed or as soon as practicable thereafter and (iii) the date such Allowed Priority

-16-

Tax Claim is payable under applicable non-bankruptcy law; *provided, however*, that the Debtor shall not pay any premium, interest or penalty in connection with such Allowed Priority Tax Claim.

### G.    Statutory Fees

Notwithstanding any other provisions of the Plan to the contrary, the Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), within ten (10) days of the entry of the order confirming the Plan, for pre-confirmation periods and simultaneously file all the Monthly Operating Reports for the relevant periods, indicating the cash disbursements for the relevant period.  The Plan Administrator shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), based upon all post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements made by the Plan Administrator, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code, and the Plan Administrator shall provide to the United States Trustee upon the payment of each post-confirmation payment, and concurrently filed with the Court, Post-Confirmation Quarterly Operating reports indicating all the cash disbursements for the relevant period.

### ARTICLE III.
### CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.    Summary

(i)    In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtor has not classified Administrative Claims and Priority Tax Claims, as described in Article II.

(ii)    The following table classifies Claims against and Equity Interests in the Debtor for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.  Each Class set forth below is treated hereunder as a distinct Class for voting and Distribution purposes.

(iii)    Summary of Classification and Treatment of Classified Claims and Equity Interests.

| Class | Claim | Status | Entitled to Vote? |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | No; Deemed to Accept the |

-17-

| | | | Plan. |
|---|---|---|---|
| 2A | Travelers DIP Loan Secured Claim | Impaired | Yes. |
| 2B | Travelers Prepetition Secured Claim | Impaired | Yes. |
| 3A | BHSI DIP Loan Secured Claim | Impaired | Yes. |
| 3B | BHSI Prepetition Secured Claim | Impaired | Yes. |
| 4 | Miscellaneous Secured Claims | Impaired | Yes. |
| 5A | Bank of America – Line of Credit Loan Secured Claim | Impaired | Yes. |
| 5B | Bank of America – Equipment Loan Secured Claim | Impaired | Yes. |
| 6 | General Unsecured Claims – Other Than Bridge Claim | Impaired | Yes. |
| 7 | Bridge Claims | Impaired | Yes. |
| 8 | Subordinated Claims | Impaired | Yes. |
| 9 | Equity Interests | Impaired | No. Deemed to Reject the Plan. |

**B.    Classification and Treatment of Claims and Equity Interests**

(i)    Other Priority Claims (Class 1)

(a)    **Classification**: Class 1 consists of Other Priority Claims.

(b)    **Treatment**: Except to the extent that a holder of an Allowed Other Priority Claim has been paid by the Debtor prior to the Effective Date or agrees to a less favorable classification and treatment, each holder of an Allowed Other Priority Claim shall receive the full unpaid amount of such Allowed Other Priority Claim in Cash, on the later of (i) the Effective Date or as soon as practicable thereafter, (ii) the date such Allowed Other Priority Claim becomes Allowed or as soon as practicable thereafter and (iii) the date such Allowed Other Priority Claim is payable under applicable non-bankruptcy law; *provided, however*, that the Debtor shall not pay any premium, interest or penalty in connection with such Allowed Other Priority Claim.

(c)    **Voting**: Class 1 is Unimpaired, and therefore, the holders of Other Priority Claims in Class 1 are not entitled to vote to accept or reject the Plan.

-18-

(ii)    <u>Travelers DIP Loan Secured Claim (Class 2A)</u>

(a)    **Classification**: Class 2A consists of the Travelers' Secured Claim arising under the Travelers DIP Documents and the Travelers DIP Loan Order in an allowed amount equal to the sum of all post-petition and post-confirmation advances made by Travelers to the Debtor pursuant to the Travelers DIP Documents, the Travelers DIP Loan Order, this Plan, and any order confirming this Plan.

(b)    **Treatment**: The Class 2A Claim shall be unimpaired under the Plan and all obligations of the Debtor under the Travelers DIP Documents and the Travelers DIP Loan Order shall be assumed by, and shall be continuing obligations of, the Reorganized Debtor.  The Reorganized Debtor shall ratify and assume all obligations of the Debtor under the Travelers DIP Documents and ratify all security interests granted to Travelers under the Travelers DIP Documents and the Travelers DIP Loan Order. Travelers, in its sole and absolute discretion, may make advances under the Travelers DIP Documents to the Reorganized Debtor during the post-confirmation period and such advances shall become part of the allowed Class 2A Claim without the need for any additional notices, filings, or court approval.  Furthermore, the rights and remedies available to Travelers under the Travelers DIP Documents, including, but not limited to, Travelers' right to utilize any and all acknowledgments of default, takeover, tender, assign, or arrange for the completion of any of the projects associated with the Travelers Bonded Contracts, and prosecute, defend, settle, etc. any claims related to Travelers Bonded Contract and/or Travelers Collateral (subject to the Intercreditor Agreement), shall be fully enforceable against the Reorganized Debtor.  Travelers shall retain all liens granted to it in conjunction with the Travelers DIP Loan Order and shall be paid by the Reorganized Debtor in accordance with the terms of the Travelers DIP Documents., until such time as the Class 2A Claim has been paid in full.  At the request of Travelers, the Reorganized Debtor shall execute additional documents as deemed necessary by Travelers to document the continuation of the Travelers DIP Loan through confirmation of this Plan and during the post-confirmation period, and the liability of the Reorganized Debtor for all amounts due or to become due under such financing.  Upon the earlier of (1) completion of all of the Travelers Bonded Contracts, and (2) default by the Reorganized Debtor under the terms of the Plan, amounts remaining due on the Class 2A Claim, if any, shall become immediately due and payable in full in cash by the Reorganized Debtor.

(c)    **Voting**: Class 2A is Impaired and is entitled to vote to accept or reject the Plan

(iii)    Travelers Prepetition Secured Claim (Class 2B)

(a)    **Classification:**    Class 2B consists of Travelers' Prepetition Secured Claims arising under the Travelers Prepetition Agreements.  Travelers shall have an unsecured deficiency claim, which shall be allowed as a Class 6 Claim; provided,

-19-

however, that Travelers shall not receive any distribution on account of its Allowed Class 6 Claim under this Plan.

        (b)     **Treatment:**  The holder of the Class 2B Claim shall retain its liens and shall retain all rights under the Indemnity Agreements as to all indemnitors other than the Debtor.  After payment in full of the Class 2A Claim, the holder of the Class 2B Claim shall receive all proceeds of the Travelers Collateral, subject to the Intercreditor Agreements, including proceeds of the Travelers Bonded Contracts and Travelers Claims, until such time as the Class 2B Claim is paid in full.

        (c)     **Voting:**  Class 2B is Impaired and is entitled to vote to accept or reject the Plan.

        (iv)     <u>BHSI DIP Loan Secured Claim (Class 3A)</u>

        (a)     **Classification**: Class 3A consists of the BHSI Secured Claim arising under the BHSI DIP Documents and the BHSI DIP Loan Order in an allowed amount equal to the sum of all post-petition advances made by BSHI to the Debtor pursuant to the BHSI DIP Loan Documents, the BHSI DIP Loan Order, this Plan, and any order confirming this Plan.

        (b)     **Treatment**: All obligations of the Debtor under the BHSI DIP Documents and the BHSI DIP Loan Order shall be assumed by, and shall be continuing obligations of, the Reorganized Debtor.  The Reorganized Debtor shall ratify and assume all obligations of the Debtor under the BHSI DIP Documents and ratify all security interests granted to BHSI under the BHSI DIP Documents and the BHSI DIP Loan Order.  The rights and remedies available to BHSI under the BHSI DIP Documents, including, but not limited to, BHSI' right to utilize any and all acknowledgments of default, takeover, tender, assign, or arrange for the completion of any of the projects associated with the BHSI Bonded Contracts, and prosecute, defend, settle, etc. any claims related to BHSI Bonded Contract and/or BHSI Collateral (subject to the Intercreditor Agreement), shall be fully enforceable against the Reorganized Debtor.  BHSI shall retain all liens granted to it in conjunction with the BHSI DIP Loan Order and shall be paid by the Reorganized Debtor in accordance with the terms of the BHSI DIP Documents, until such time as the Class 3A Claim has been paid in full.  At the request of BHSI, the Reorganized Debtor shall execute additional documents as deemed reasonably necessary by BHSI to document the continuation of the BHSI DIP Loan through confirmation of this Plan and during the post-confirmation period, and the liability of the Reorganized Debtor for all amounts due or to become due under such financing.  Upon the earlier of (1) completion of all of the BHSI Bonded Contracts, regardless of whether the Debtor or Reorganized Debtor are the completion contractor, or (2) default by the Reorganized Debtor under the terms of the Plan or BHSI DIP Loan Documents, amounts remaining due on the Class 3A Claim, if any, shall become immediately due and payable.

(c)    **Voting**: Class 3A is Impaired and is entitled to vote to accept or reject the Plan.

(v)    BHSI Prepetition Secured Claim (Class 3B)

(a)    **Classification**: Class 3B consists of the BHSI Pre-Petition Secured Claim arising under the BHSI Pre-Petition Agreements.  BHSI shall also have an unsecured deficiency claim which shall be allowed as a Class 6 Claim; provided, however, that BHSI shall not receive any distribution on account of its Allowed Class 6 Claim under this Plan.

(b)    **Treatment**: The holder of the Class 3B Claim shall retain its liens and rights under the BHSI Pre-Petition Agreements as to all indemnitors other than the Debtor.  After payment in full of the Class 3A Claim, the holder of the Class 3B Claim shall receive all proceeds of the BHSI Collateral, subject to the Intercreditor Agreements, including proceeds of the BHSI Bonded Contracts and BHSI Claims, until such time as the Class 3B Claim is paid in full.

(c)    **Voting**: Class 3B is Impaired and is entitled to vote to accept or reject the Plan.

(vi)    Miscellaneous Secured Claims (Class 4)

(a)    **Classification:** Class 4 consists of Miscellaneous Secured Claims.

(b)    **Treatment**: Except to the extent that a holder of an Allowed Class 4 Secured Claim has been paid by the Debtor prior to the Effective Date or agrees to a less favorable classification and treatment, each holder of an Allowed Miscellaneous Secured Claim shall receive (i) the full unpaid amount of such Allowed Secured Claim, in Cash, (ii) deferred cash payments with a value, as of the Effective Date of the Plan, equal to the Allowed amount of such claim, or (iii) the property securing such Allowed Secured Claim in full satisfaction, release and discharge or such Allowed Secured, all of the latter of: (i) the Effective Date or as soon as practicable thereafter; (ii) the first Business Day after the date that is ten (10) Business Days after the date such Claim becomes an Allowed Secured Claim; and (iii) the date or dates agreed to by the Debtor and the holder of the Allowed Secured Claim.

(c)    **Voting**: Class 4 is Impaired and, therefore, the holders of Secured Claims in Class 4 are entitled to vote to accept or reject the Plan.

(vii)    Bank of America Line of Credit Loan - Secured Claim (Class 5A)

(a)    **Classification**: Class 5A consists of the Secured Claim on account of the Bank of America Line of Credit Loan.

-21-

(b)      **Treatment:**  Except to the extent that the holder of the Allowed Class 5A Secured Claim has been paid in full by the Debtor prior to the Effective Date or agrees, in writing, to a less favorable classification and treatment, the holder of the Allowed Class 5 Secured Claim shall retain its liens under the Bank of America Security Agreement which shall remain in force and shall not be altered or modified by the Plan and Confirmation Order.  The holder of the Allowed Class 5 Secured Claim shall receive all Net Proceeds of the sale of the collateral securing the Allowed Class 5 Claim until such time as the Allowed Class 5 Claim in paid in full, in cash, inclusive of interest, costs and attorneys' fees.  Any amount remaining due and owing to the holder of the Allowed Class 5 Claim after all such collateral has been liquidated shall be treated as a Class 6 Claim.

(c)      **Voting:** Class 5A is Impaired and is entitled to vote to accept or reject the Plan.

(viii)    Bank of America Equipment Secured Claim (Class 5B)

(a)      **Classification:** Class 5B consists of the Secured Claim on account of the Bank of America Equipment Loan.

(b)      **Treatment:**  Except to the extent that the holder of the Allowed Class 5A Secured Claim has been paid in full by the Debtor prior to the Effective Date or agrees, in writing, to a less favorable classification and treatment, the holder of the Allowed Class 5 Secured Claim shall retain its liens under the Bank of America Security Agreement which shall remain in force and shall not be altered or modified by the Plan and Confirmation Order.  The holder of the Allowed Class 5 Secured Claim shall receive all Net Proceeds of the sale of the collateral securing the Allowed Class 5 Claim until such time as the Allowed Class 5 Claim in paid in full, in cash, inclusive of interest, costs and attorneys' fees.  Any amount remaining due and owing to the holder of the Allowed Class 5 Claim after all such collateral has been liquidated shall be treated as a Class 6 Claim.

(c)      **Voting:** Class 5B is Impaired and is entitled to vote to accept or reject the Plan.

(ix)    Allowed General Unsecured Claims (Class 6)

(a)      **Classification**: Class 6 consists of Allowed General Unsecured Claims (other than Bridge Claims).

(b)      **Treatment**: Except to the extent that a holder of an Allowed General Unsecured Claim has been paid by the Debtor prior to the Effective Date or agrees to a less favorable classification and treatment, each holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of Plan Cash and the Net Proceeds of Available Avoidance Actions, if any.  The foregoing distributions shall be made on the

later of (i) the Effective Date or as soon as practicable thereafter, (ii) the date such General Unsecured Claim becomes Allowed or as soon as practicable thereafter and (iii) the date such Allowed General Unsecured Claim is payable under applicable non-bankruptcy law; *provided, however*, that neither the Debtor nor the Reorganized Debtor shall pay any premium, interest or penalty in connection with such Allowed General Unsecured Claim.

(c)    **Voting**: Class 6 is Impaired and, therefore, the holders of Allowed General Unsecured Claims in Class 6 are entitled to vote to accept or reject the Plan.

(x)    Bridge Claims (Class 7)

(a)    **Classification**: Class 7 consists of Allowed Bridge Claims.

(b)    **Treatment**: At the election of the Debtor or the Reorganized Debtor, as applicable, each holder of an Allowed Class 7 Claim shall receive the following treatment:

i.    If the Debtor or the Reorganized Debtor, as applicable, and an Insurer that issued one or more policies of Insurance reach final agreement regarding the Insurer's contribution of the policy limits of the Insurance to resolve all Bridge Claims[3], then each holder of a Class 7 Claim shall receive its Pro Rata share of the proceeds of such Insurance; provided, however, that as a condition to receiving its Pro Rata share of such proceeds such holder shall execute and deliver (X) a release in favor of the Debtor and the Insurer contributing the policy limits, and (Y) such other documents as the Debtor or Reorganized Debtor, as applicable, and the Insurer reasonably request; or

ii.    Notwithstanding the discharge and injunction provisions of this Plan, the holders of Class 7 Claims shall be permitted to prosecute their claims and causes of action at law or in equity solely to the limits of available Insurance.

Under no circumstances shall a holder of a Class 7 Claim have recourse against the Reorganized Debtor, any Released Party or any property of the Reorganized Debtor or of any Released Party.

(c)    **Voting**: Class 7 is Impaired and, therefore, the holders of Claims in Class 7 are entitled to vote to accept or reject the Plan.

---

[3] The Debtor and the Insurers have been engaged in good faith negotiations regarding the Insurers' contribution of the policy limits to enable the Debtor to establish a settlement trust or fund that the Debtor believes will enable the Debtor to fully resolve all claims asserted against the Debtor relating to the collapse of the FIU Pedestrian Bridge. Under this proposal the Insurers would pay the applicable policy limits of the insurance policies, totaling approximately $42 million, thereby fully and completely exhausting the policy limits and extinguishing each Insurer's obligations under the insurance policies, in consideration of the Debtor's agreement to fully and completely release each Insurer from any and all claims arising out of, relating to or in any way involving the collapse of the FIU Pedestrian Bridge.

-23-

(xi)    Subordinated Claims (Class 8)

(a)    **Classification**: Class 8 consists of Subordinated Claims.

(b)    **Treatment**: Except to the extent that a holder of a Subordinated Claim agrees to a less favorable classification and treatment, each holder of a Subordinated Claim shall receive its Pro Rata share of the net proceeds of Available Avoidance Actions, if any, remaining after the making the payments set forth in Article II and Article III, Section B, subsections (i) through (viii) of this Plan, inclusive. The foregoing Distributions shall be made on the later of (i) the Effective Date or as soon as practicable thereafter, (ii) the date such Subordinated Claim becomes Allowed or as soon as practicable thereafter and (iii) the date such Subordinated Claim is payable under applicable non-bankruptcy law; *provided, however*, that the Debtor shall not pay any premium, interest or penalty in connection with such Subordinated Claim.

(c)    **Voting**: Class 8 is Impaired and, therefore, is entitled to vote to accept or reject the Plan.

(xii)    Equity Interests (Class 9)

(a)    **Classification**: Class 9 consists of Equity Interests.

(b)    **Treatment**: The holders of Equity Interest shall not receive nor retain any property under the Plan. Class 9 Equity Interests shall be extinguished as of the Effective Date of the Plan. In exchange for the Capital Contribution, the Equity Interest shall be issued to the New Equity Holder.

(c)    **Voting**: Class 9 is Impaired and is deemed to have rejected the Plan.

## ARTICLE IV.
## ACCEPTANCE, REJECTION, AMENDMENT AND
## REVOCATION OR WITHDRAWAL OF THE PLAN

**A.    Classes Entitled to Vote**

Each holder of a Claim, as of the Record Date, in an Impaired Class, other than those Classes that are deemed to reject the Plan, shall be entitled to vote to accept or reject the Plan, in its sole and absolute discretion, subject to applicable law. Class 1is deemed to have accepted the Plan. Votes from holders of Claims in Classes 2A, 2B, 3A, 3B, 4, 5A, 5B, 6, 7 and 8, will be solicited as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Bankruptcy Court. Class 9, Equity Interests is deemed to reject the Plan and, therefore, the vote in Class 9 will not be solicited.

-24-

## B.    Acceptance by Class of Claims

Impaired Class of Claims shall be deemed to accept the Plan if (a) holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.  For purposes of calculating the number of Allowed Claims in a Class of Claims that have voted to accept or reject the Plan under section 1126(c) of the Bankruptcy Code, all Allowed Claims in such Class held by one Entity or any Affiliate thereof shall be aggregated and treated as one Allowed Claim in such Class.  For purposes of any Claim in any Impaired Class that is Disputed as to its amount only, the holder of such claim shall be entitled to vote on the Plan as if such holder held an Allowed Claim in an amount equal to the undisputed portion of such Claim.

## C.    Nonconsensual Confirmation

In the event that any Class of Claims entitled to vote shall not accept the Plan by the requisite statutory majority required by section 1129(a) of the Bankruptcy Code, the Debtor reserves the right to (a) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to such non-accepting Class, in which case the Plan shall constitute a motion for such relief, or (b) alter, amend or modify the Plan in accordance with Article XII.  The Debtor shall exercise the right to seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code.

## D.    Revocation or Withdrawal; No Admissions

*Right to Revoke or Withdraw*.  The Plan may be revoked or withdrawn prior to the Confirmation Date by the Debtor in its sole discretion following consultation with BHSI and Travelers without prejudice to the Debtor's right to one or more amended plans.

*Effect of Withdrawal or Revocation; No Admissions*.  If the Debtor revokes or withdraws the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other Entity; (b) prejudice in any manner the rights of either of the Debtor or any other Entity; or (c) constitute an admission of any sort by either of the Debtor or any other Entity.

## E.    Amendment of Plan Documents

From and after the Effective Date, the authority to amend, modify, or supplement the Plan Supplement, the Exhibits to the Plan Supplement and the Exhibits to the Plan and any

-25-

documents attached to such Plan Supplement, Exhibits to the Plan Supplement and Exhibits to the Plan shall be as provided in such Plan Supplement, Exhibits to the Plan Supplement and Exhibits to the Plan and their respective attachments.

### F.    Special Provision Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's rights with respect to any Unimpaired Claim, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

## ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.    Source of Funding for Plan Distributions

The Plan will be implemented through (a) the Capital Contribution to be provided by the New Equity Holder as of the Effective Date; (b) as to Classes 2A and 2B and 3A and 3B, from the proceeds of the Travelers Bonded Contracts and BHSI Bonded Contracts, respectively; (c) with respect to Claims in Classes 4, 5A and 5B, from the revenues generated by the Reorganized Debtor or sale proceeds of the collateral securing Allowed Claims in those Classes received by the Reorganized Debtor; and (d) with respect to Allowed Claims in Class 6, from Plan Cash and the Net Proceeds of Available Avoidance Actions, if any.  The Plan contemplates (a) that the Reorganized Debtor will complete construction on the bonded jobs and satisfy its obligations to Travelers and BHSI under the Assumed Contracts, and (b) the appointment of the Plan Administrator to investigate and prosecute Available Avoidance Actions and to make distributions to the holders of Allowed Class 6 Claims.  None of the distributions to be made to the holders of Claims in Class 6 and Class 7 shall be made from the revenues realized from the operations of the Reorganized Debtor. Claims in Class 7 shall receive a distribution from available Insurance, if any.

### B.    Section 1146 Exemption

Pursuant to section 1146 of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any equity security or notes, or the creation, making, assignment delivery or recording of any mortgage, deed of trust, instrument of transfer, pursuant to, in implementation of or as contemplated by the Plan or any Plan Document, or the vesting, re-vesting, transfer or sale of any property of, by or in the Debtor or its Estate or Reorganized Debtor pursuant to, in implementation of or as contemplated by the Plan or any Plan Document, or any transaction arising out of, contemplated by or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, sales and use Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall, by the Confirmation Order, be directed to forego the collection of any such tax or governmental assessment and to accept for

-26-

filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### C.    Travelers Bonded Contracts; Release of Travelers

The Reorganized Debtor shall assume all of the Travelers Bonded Contracts and shall use all available resources to complete the same in accordance with the contracted terms.  Travelers shall retain the right to remove the Reorganized Debtor from any of the projects associated with the Travelers Bonded Contracts for any or no reason, in Travelers' sole and absolute discretion, and to utilize any and all acknowledgments of default takeover, tender, assign, or arrange for the completion of the same through a completing contractor, in Travelers' sole and absolute discretion.  The Travelers DIP Documents and the Travelers CMS Documents are all fully assumed by the Reorganized Debtor and the Reorganized Debtor will comply with all terms therein applicable to the Debtor.

Subject to terms and conditions of the Travelers Agreements, and as a condition of the Travelers DIP Documents, Debtor has and is required to release Travelers from any and all claims, actions, and defenses, all as further set out in the Travelers DIP Documents, which continue in full force and effect after the Effective Date.

### D.    BHSI Bonded Contracts; Release of BSHI

To the extent requested by BHSI, the Reorganized Debtor shall assume the BHSI Bonded Contracts and shall use all available resources to complete the same in accordance with the contracted terms.  BHSI shall retain the right to remove the Reorganized Debtor from any of the projects associated with the BHSI Bonded Contracts for any or no reason, in BHSI's sole and absolute discretion, and to utilize any and all acknowledgments of default takeover, tender, assign, or arrange for the completion of the same through a completing contractor, in BHSI's sole and absolute discretion. The BHSI DIP Loan Documents and the BHSI Trust Financing Agreement are all fully assumed by the Reorganized Debtor and the Reorganized Debtor will comply with all terms therein applicable to the Debtor.

Subject to terms and conditions of the BHSI Agreements, and as a condition of the BHSI DIP Loan Documents, Debtor has and is required to release BHSI from any and all claims, actions, and defenses, all as further set out in the BHSI DIP Loan Documents, which continue in full force and effect after the Effective Date.

### E.    Corporate Action

All actions contemplated to be performed by the Debtor or the Reorganized Debtor pursuant to the Plan, or any corporate action to be taken by or required of the Debtor or the Reorganized Debtor, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the shareholders, partners, members or managers of the Debtor or the Reorganized Debtor.  All Persons, the Reorganized Debtor, Governmental Units, title agencies,

-27-

licensing agencies and offices of recordation may rely upon the authority vested in the Debtor's officers, or managers to act on the Debtor's behalf in order to effectuate the Plan and the transactions contemplated herein.

### F.     Vesting of Assets in the Reorganized Debtor

Except as otherwise provided in the Plan or the other Plan Documents, pursuant to sections 1123(a)(5), 1123(b)(3) and 1141(b) and (c) of the Bankruptcy Code, on the Effective Date, all property of the Estate (other than Available Avoidance Actions) shall vest in the Reorganized Debtor free and clear of all Liens, Claims, charges, or other encumbrances.  As of the Effective Date, the Reorganized Debtor may operate its businesses and use, acquire, and dispose of its property, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.  All privileges with respect to the property of the Estate, including the attorney/client privilege, to which the Debtor is entitled shall automatically vest in, and may be asserted by or waived on behalf of, the Reorganized Debtor.  In the event that the Reorganized Debtor's Chapter 11 Case is converted to a case under chapter 7 for any reason, any property held by either the Debtor or the Reorganized Debtor at any time, other than property that already has been distributed under this Plan prior to conversion of the case from chapter 11 to chapter 7, shall revest in the Debtor.

### G.     Post-Confirmation Cash Management.

The Reorganized Debtor shall assume and shall comply with the Travelers CMS Agreements and the BHSI Trust Financing Agreement, including ensuring that all cash proceeds of Travelers Bonded Contracts and BHSI Bonded Contracts are, at all times, handled in accordance with the Travelers CMS Agreements and the BHSI Trust Financing Agreement.

### H.     Appointment of Plan Administrator

On the Effective Date, the Plan Administrator shall be appointed.  The Plan Administrator shall perform those duties reserved for such person in the Plan.  On the Effective Date, the Debtor shall deliver the Plan Cash to the Plan Administrator.

### I.     Powers and Obligations of the Plan Administrator

As of the Effective Date, the Plan Administrator shall act in a fiduciary capacity solely for the Holders of all Allowed Class 6 Claims hereunder and shall have the following rights, powers and duties conferred to him by the Plan:

      i.    To prosecute, compromise or settle Objections to Claims in Class 6 and to make or direct that Distributions be made to Holders of Allowed Class 6 Claims;

     ii.    To make decisions regarding the retention or engagement of Professionals and to pay all reasonable fees and expenses incurred after the Effective Date;

-28-

    iii.    To make or direct Distributions to Holders of Allowed Class 6 Claims;

    iv.    To pursue, litigate or settle all Available Avoidance Actions;

    v.    To file with the Bankruptcy Court the reports and other documents and to pay any and all fees required by the Plan or otherwise required to close the Chapter 11 Case, including the preparation and filing of a motion for a final decree;

    vi.    To set off amounts owed to the Debtor against any and all amounts otherwise due to be distributed to the Holder of Allowed Class 6 Claims hereunder.

**J.    Engagement of Post Confirmation Professionals and Compensation to Plan Administrator and Post Confirmation Professionals**

The Plan Administrator shall be compensated from the Plan Cash and the remaining proceeds of Available Avoidance Actions. The Plan Administrator may also engage (a) administrative personnel to assist in the evaluation of assets of the estate, financial reporting and other administrative matters; and (b) counsel and other professionals to represent him in connection with his duties hereunder (the "Post Confirmation Professionals"). The Plan Administrator shall be authorized to pay the Post Confirmation Professionals 90% of their fees and 100% of their costs on a monthly basis without application or further order of the Bankruptcy Court from Cash on hand; *provided, however*, that the Post Confirmation Professionals shall file applications no less frequently than every 120 days seeking approval of fees and expenses incurred by them, including approval of the amounts paid on a monthly basis by the Plan Administrator. A Post Confirmation Professional who fails to file an application seeking approval of compensation and expenses previously paid when such application is due every 120 days shall be precluded from receiving monthly compensation as provided herein until an interim fee application has been filed and heard by the Bankruptcy Court. Upon the filing of each such application, the Post Confirmation Professionals shall be entitled to request the payment of all or any portion of the pending holdbacks. The Bankruptcy Court shall retain jurisdiction to allow or disallow all Post Confirmation Administrative Expense Claims of the Plan Administrator and the Post Confirmation Professionals. The invoices for services rendered and out-of-pocket expenses incurred which are to be submitted shall be sufficiently detailed to identify the hours worked, the rates charged and the work performed

**K.    Bond**

Upon request of the United States Trustee, the Plan Administrator shall obtain a bond in an amount agreed to by the Plan Administrator and the United States Trustee or as determined by the Bankruptcy Court following notice and a hearing.

**L.    Resignation, Death or Removal of the Plan Administrator**

-29-

The Plan Administrator may resign at any time; *provided, however*, that he shall file a motion with the Bankruptcy Court in connection therewith and request that a successor or replacement be appointed, which motion shall be on notice to creditors holding Allowed Claims and the Office of the United States Trustee.  The Office of the United States Trustee or any party in interest, by motion filed with the Bankruptcy Court, or the Bankruptcy Court on its own order to show cause, may seek to remove the Plan Administrator for cause, in accordance with the standards set forth in section 324 of the Bankruptcy Code, for the violation of any material provision of the Plan, or in the event the Plan Administrator becomes incapable of acting hereunder as a result of physical or mental disability and such physical or mental disability continues for a period in excess of thirty (30) days (except in the case of death, in which instance the procedures for replacement will begin immediately).  In the event of a resignation or removal, the  Plan Administrator, unless he is incapable of doing so, shall continue to perform his duties hereunder until such a time as a successor is approved by a Final Order of the Bankruptcy Court.

### M.    Distributions

The Distributions will be made in accordance with the Plan by the Reorganized Debtor to holders of Claims in all Classes other than Class 6, and, as to distributions to Class 6, the Plan Administrator.

### N.    Surrender and Cancellation of Notes, Instruments, Certificates and Other Documents Evidencing Claims

On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, certificates, and other documents evidencing Claims will be cancelled and the obligations of the Debtor discharged in accordance with section 1141(d)(1) of the Bankruptcy Code.

### O.    Cancellation of Equity Interests

On the Effective Date, the Equity Interests shall be cancelled, and new Equity Interests shall be issued to the New Equity Holder.

### P.    Continued Corporate Existence of the Reorganized Debtor

The Reorganized Debtor will exist after the Effective Date with all of the powers of a limited liability company under Florida law and pursuant to its certificate of incorporation and bylaws or other organizational documents in effect before the Effective Date, except to the extent such certificate of incorporation or bylaws (or other formation documents in the case of a limited liability company or limited partnership) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be authorized pursuant hereto and without the need for any other approvals, authorizations, actions or consents.  Notwithstanding, each of the Debtor or Reorganized Debtor may change its name, status of incorporation or alter its corporate structure or business form (either through a merger, consolidation, restructuring,

-30-

conversion, disposition, liquidation, dissolution, or otherwise) on or after the Effective Date as may be determined by the Debtor or Reorganized Debtor to be appropriate. In each case in which the surviving, resulting, or acquiring company in any such transaction is a successor to a Debtor, such successor company shall perform the obligations of the applicable Debtor under the Plan, if any, including, to pay or otherwise satisfy the Allowed Claims against such Debtor.

### Q.    Post-Confirmation Accounts

The Plan Administrator may establish one or more interest-bearing accounts as it determines may be necessary or appropriate to effectuate the provisions of the Plan consistent with the section 345 of the Bankruptcy Code, the Travelers CMS Agreements, and any orders of the Bankruptcy Court.

### R.    Managers of the Reorganized Debtor

The Manager(s) of the Debtor who shall serve from and after Effective Date shall be disclosed in the Plan Supplement.

From and after the Effective Date, the operations of the Reorganized Debtor shall continue to be the responsibility of its members and managers, as the case may be, or as set forth in the applicable existing organizational or operational documents of the Debtor.

### S.    Effectuating Documents & Further Transactions

On or before the Effective Date, and without the need for any further order or authority, the Debtor shall file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents that are in form and substance satisfactory to the Debtor as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor, the Reorganized Debtor, and any other necessary party, as applicable, shall perform all actions reasonably contemplated regarding the implementation of the Plan. The officers, members and managers, as the case may be, of the Debtor and the Reorganized Debtor are authorized, without the need for any further order or authority, (i) to execute, deliver, file, or record such contracts, instruments, releases, indentures, mortgages, and other agreements or documents and take such actions as may be necessary or appropriate to implement or consummate the Plan, notes or securities issued or conveyed pursuant to the Plan, and (ii) to undertake any other action on behalf of the Debtor to implement or consummate the Plan. Each of the matters provided for under the Plan involving the corporate structure of the Debtor or corporate action to be taken by or required of any Debtor will, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized, approved, and (to the extent taken before the Effective Date) ratified in all respects without any requirement of further action by any member, officer, creditor, or manager of the Debtor.

### T.    Section 1145 Determination

The offer, purchase, sale, exchange and issuance of securities under the Plan, or in connection with the Plan, is exempt from the registration requirements under state and federal securities laws.

**U.        Preservation of Causes of Action**

The Debtor (prior to the Effective Date) and the Reorganized Debtor (on and after the Effective Date) shall retain all Causes of Action, except (a) those which are released, settled or compromised prior to the Confirmation Date, and (b) Available Avoidance Actions that shall vest in the Plan Administrator. The Plan Administrator shall serve as the representative of the Estate for purposes of prosecuting and compromising the Available Avoidance Actions.

On the Effective Date, the Causes of Action shall be preserved and vested in the Reorganized Debtor for the benefit of the Reorganized Debtor.  Subject to the rights of Travelers under the Travelers DIP Documents, the Reorganized Debtor will have the right, in its sole and absolute discretion, to pursue, not pursue, enforce, file, settle, compromise, release, withdraw, arbitrate or litigate any Cause of Action without seeking any approval from the Bankruptcy Court.

Creditors are advised that legal rights, claims and rights of action the Debtor may have against them, if they exist, are retained under the Plan for prosecution unless a specific order of the Bankruptcy Court authorizes the Debtor or Plan Administrator to release such claims.  As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Disclosure Statement, the Plan, or the Schedules, or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtor or Reorganized Debtor do not possess or do not intend to prosecute a particular claim or Cause of Action if a particular Creditor votes to accept the Plan. Except as otherwise expressly provided, it is the expressed intention of the Plan to preserve rights, objections to Claims, and rights of action of the Debtor, whether now known or unknown, for the benefit of Reorganized Debtor.  A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or in the Disclosure Statement; nor shall the Reorganized Debtor, as a result of such failure, be estopped or precluded under any theory from pursuing any such Cause of Action. Nothing in the Plan operates as a release of any Cause of Action.

The Debtor does not presently know the full extent of the Causes of Action or Available Avoidance Actions and, for purposes of voting on the Plan, all Creditors are advised that the Reorganized Debtor and Plan Administrator will each have substantially the same rights that a Chapter 7 trustee would have with respect to the Causes of Action and Available Avoidance Actions, respectfully.   Accordingly, neither a vote to accept the Plan by any Creditor nor the entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Cause of Action or Available Avoidance Actions against such Creditor or any other Person or Entity, unless such Creditor, Person or Entity is specifically identified by name as a Released Party in the Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court. Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be

-32-

deemed to have any res judicata or collateral estoppel or other preclusive effect that would precede, preclude, or inhibit prosecution of such Cause of Action following Confirmation of the Plan.

The Estate shall remain open, even if the Bankruptcy Case shall have been closed, as to any and all Available Avoidance Actions until such time as the Available Avoidance Actions have been fully administered and the recoveries therefrom have been received.

## V.    Prosecution and Settlement of Causes of Action and Available Avoidance Actions

The Reorganized Debtor or Plan Administrator, as applicable, (a) may commence or continue in any appropriate court, tribunal or any other appropriate setting (e.g., American Arbitration Association or other arbitration association) any suit or other proceeding for the enforcement of any Cause of Action or Available Avoidance Action which the Debtor had or had power to assert immediately prior to the Effective Date, and (b) may settle or adjust such Cause of Action or Available Avoidance Action; *provided, however*, that from and after the Effective Date, the Reorganized Debtor shall be authorized to compromise and settle any Cause of Action or objection to a Claim without approval by the Bankruptcy Court.

## W.    Automatic Stay

The automatic stay provided for under section 362 of the Bankruptcy Code shall remain in effect in the Chapter 11 Case until the Effective Date.

## X.    Closing of the Chapter 11 Case

Notwithstanding anything to the contrary in the Bankruptcy Rules or Local Rules providing for earlier closure of the chapter 11 case, when all Claims against the Debtor have become Allowed Claims or disallowed Claims, and the Debtor has made the first distributions contemplated under the Plan, or at such earlier time as the Reorganized Debtor deems appropriate, the Reorganized Debtor shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

## A.    Manner of Cash Payments Under the Plan

Any Distribution pursuant to the Plan, to the extent posted in the United States mail, shall be deemed made when deposited by the Reorganized Debtor or Plan Administrator (or their respective agent(s)), as applicable, into the United States mail.  At the option of the Reorganized Debtor or Plan Administrator, as applicable, any Cash payment to be made pursuant to the Plan shall be made, at the election of the Reorganized Debtor or Plan Administrator, as applicable, by check drawn on a domestic bank, by wire transfer, or by ACH, from a domestic bank, or other method mutually agreed upon by the holder of the Allowed Claim and the Reorganized Debtor

-33-

or Plan Administrator.  Whenever any Distribution to be made under the Plan shall be due on a day other than a Business Day, such Distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on that due date.

### B.    Entity Making Distributions

Distributions to holders of Allowed Claims in Class 6 which shall be made by the Plan Administrator.   The Distributions to holders of Allowed Claims in all other Classes shall be made by the Reorganized Debtor.  The Plan Administrator shall hold the Disputed Claims Reserve for Claims in Class 6; the Reorganized Debtor shall hold the Disputed Claims Reserve for Claims in all other Classes.  Neither the Reorganized Debtor nor the Plan Administrator shall be required to give any bond or surety or other security for the performance of their duties, unless otherwise ordered by the Bankruptcy Court.

### C.    Distribution Dates

Distributions to holders of Claims shall be made as provided in Articles II and III of this Plan.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

### D.    Record Date for Distributions

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Record Date will be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Record Date.  The Reorganized Debtor or Plan Administrator, as applicable, shall have no obligation to recognize any transfer of any Claim occurring after the Record Date.  In making any Distribution with respect to any Claim, the Reorganized Debtor or Plan Administrator, as applicable, shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of Claim filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the Record Date and upon such other evidence or record of transfer or assignment that was known to the Debtor as of the Record Date.

### E.    Delivery of Distributions

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made by the Reorganized Debtor or Plan Administrator, as applicable, at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim filed by such holder or (b) the last known address of such holder if no proof of Claim is filed or if the Reorganized Debtor or Plan Administrator, as applicable, have not been notified in writing of a change of address.

### F.    Undeliverable and Unclaimed Distributions

-34-

8696514

In the event that any Distribution to any holder of an Allowed Claim made by the Reorganized Debtor or Plan Administrator, as applicable is returned as undeliverable, the Reorganized Debtor or Plan Administrator , as applicable, shall use commercially reasonable efforts to determine the current address of each holder, but no Distribution to such holder shall be made unless and until the Reorganized Debtor or Plan Administrator, as applicable, has determined the then current address of such holder; *provided, however*, that all Distributions to holders of Allowed Claims made by the Reorganized Debtor or Plan Administrator, as applicable, that are unclaimed for a period of ninety (90) days after the date of the first attempted Distribution shall have its, his or her Claim for such undeliverable Distribution deemed satisfied and will be forever barred from asserting any such Claim against the Reorganized Debtor or Plan Administrator, as applicable, or their property.  Any Distributions which are undeliverable or have not been negotiated within the time set forth above shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and revested in the Reorganized Debtor or Plan Administrator, as applicable.  The Reorganized Debtor or Plan Administrator, as applicable, shall have no further obligation to make any Distribution to the holder of such Claim on account of such Claim, and any entitlement of any holder of such Claim to any such Distributions shall be extinguished and forever barred; *provided, however*, that the holder of such Claim may receive future Distributions on account of such Claim by contacting the Reorganized Debtor or Plan Administrator, as applicable,  at some point prior to the final Distribution.

### G.    Compliance with Tax Requirements

The Reorganized Debtor or Plan Administrator, as applicable, may withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the Tax Code or any provision of any foreign, state or local tax law with respect to any payment or Distribution on account of Claims; *provided*, *however*, that the Reorganized Debtor or Plan Administrator, as applicable, shall not make any such withholdings described in this paragraph (other than routine tax withholdings with respect to employee-related claims (if any)) from any payment or Distribution on account of Claims without first filing a notice with the Court (and serving such notice on the holder of the Claim) describing the nature and amount of the proposed withholding and providing the Creditor an opportunity to object.  All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such holders of the Claims. The Reorganized Debtor or Plan Administrator, as applicable, shall be authorized to collect such tax information from the holders of Claims (including social security numbers or other tax identification numbers) as they in their sole discretion deems necessary to effectuate the Plan.  In order to receive Distributions under the Plan, all holders of Claims will need to identify themselves to the Reorganized Debtor or Plan Administrator, as applicable, and provide all tax information the Reorganized Debtor or Plan Administrator, as applicable, deems appropriate (including completing the appropriate Form W-8 or Form W-9, as applicable to each holder). The Reorganized Debtor or Plan Administrator, as applicable, may refuse to make a Distribution to any holder of a Claim that fails to furnish such information within the time period specified by the Reorganized Debtor or Plan Administrator, as applicable, and such Distribution shall be deemed an unclaimed Distribution under the Plan, and, provided further that, if the Reorganized Debtor or Plan Administrator, as applicable, fail to withhold in respect of amounts received or distributable with respect to any such holder and such Debtor are later held liable for the amount

of such withholding, such holder shall reimburse the Reorganized Debtor or Plan Administrator, as applicable, for such liability. Notwithstanding any other provision of the Plan, (a) each holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, and (b) no Distributions shall be required to be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements satisfactory to the Reorganized Debtor or Plan Administrator, as applicable, for the payment and satisfaction of such tax obligations or has, to the Reorganized Debtor's or Plan Administrator's, as applicable, satisfaction, established an exemption therefrom.

### H.    No Payments of Fractional Dollars

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan. Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

### I.    Interest on Claims

Except as specifically provided for in this Plan or the Confirmation Order or required by the Bankruptcy Code, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest on any Claim accruing on or after the Petition Date. Interest shall not accrue on any General Unsecured Claim that is a Disputed Claim in respect of the period from the Effective Date to the date a final Distribution is made thereon if and after that Disputed Claim becomes an Allowed Claim. Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for post-petition interest or similar charges.

### J.    No Distribution in Excess of Allowed Amount of Claim

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of such Claim.

### K.    Setoff and Recoupment

The Reorganized Debtor, may setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any Claims or defenses of any nature whatsoever that any of the Reorganized Debtor or Plan Administrator, as applicable, or the Estate may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Reorganized Debtor or Plan Administrator, as applicable, or the Estate of any right of setoff or recoupment that any of them may have against the holder of any Claim. Any such setoffs or recoupments may be challenged in Bankruptcy Court. Notwithstanding any provision in the Plan to the contrary, nothing herein shall bar any creditor from asserting its setoff or recoupment rights to

8696514

the extent permitted under section 553 or any other provision of the Bankruptcy Code; *provided, however*, that such setoff or recoupment rights are timely asserted; provided further that all rights of the Reorganized Debtor or Plan Administrator, as applicable, and the Estate with respect thereto are reserved.

### L.    De Minimis Distributions; Charitable Donation

Notwithstanding anything to the contrary in the Plan, the Reorganized Debtor or Plan Administrator, as applicable, shall not be required to make a Distribution to any Creditor if the dollar amount of the Distribution is less than $10 or otherwise so small that the cost of making that Distribution exceeds the dollar amount of such Distribution.  On or about the time that the final Distribution is made, the Reorganized Debtor or Plan Administrator, as applicable, may make a donation of undistributable funds as defined by Local Rule 3011-1(C)(1), in the reasonable discretion of the Reorganized Debtor or Plan Administrator, as applicable, to one or more of the following organizations (each of which qualifies for not-for-profit status under section 501(c)(3) of the Tax Code) with undistributable funds if, in the reasonable judgment of the Reorganized Debtor or Plan Administrator, as applicable, the cost of calculating and making the final Distribution of the undistributable funds remaining is excessive in relation to the benefits to the or holders of Claims who would otherwise be entitled to such Distributions: (i) the Bankruptcy Bar Foundation of the Bankruptcy Bar Association of the Southern District of Florida; or (ii) Legal Services of Greater Miami, Inc.

### M.    United States Trustee Fees

The Reorganized Debtor shall pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), within ten (10) days of the Effective Date, for pre-confirmation periods.  The Plan Administrator shall pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements made by the Plan Administrator, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code.  After the Confirmation Date, the Plan Administrator, shall file a quarterly Post-Confirmation Operating Report which shall include, among other things, all payments made under the Plan and payments made in the ordinary course of business.

### N.    Withholding from Distributions

Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions pursuant to the Plan.  The Reorganized Debtor or Plan Administrator, as applicable, may withhold from amounts distributable pursuant to the Plan to any Person or Entity any and all amounts, determined in the reasonable discretion of the Reorganized Debtor or Plan Administrator, as applicable, required to be withheld by any law, regulation, rule, ruling, directive, or other governmental requirement. The Reorganized Debtor or Plan Administrator, as applicable, shall not make any such

-37-

withholdings described in this paragraph (other than routine tax withholdings with respect to employee-related claims (if any)) from any payment or Distribution on account of Claims without first filing a notice with the Court (and serving such notice on the holder of the Claim) describing the nature and amount of the proposed withholding and providing the Creditor an opportunity to object.

### O.    Distributions in Satisfaction; Allocation

Except for the obligations expressly imposed by the Plan and the property and rights expressly retained under the Plan, if any, the Distributions and rights that are provided in the Plan shall be in complete satisfaction and release of all Claims against, liabilities in, Liens on, obligations of and Equity Interests in the Debtor and their Estate, whether known or unknown, that arose or existed prior to the Effective Date.  Distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest (if any).

### P.    No Distributions on Late-Filed Claims

Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a proof of Claim was required to be filed and was first filed after the applicable bar date in the Chapter 11 Case, including, without limitation, the General Bar Date and any bar date established in the Plan or in the Confirmation Order, shall automatically be deemed a late-filed Claim that is disallowed in the Chapter 11 Case, without the need for (a) any further action by the Reorganized Debtor or Plan Administrator, as applicable, (b) an order of the Bankruptcy Court.  Nothing in this paragraph is intended to expand or modify the applicable bar dates or any orders of the Bankruptcy Court relating thereto.

### ARTICLE VII.
### DISPUTED CLAIMS

### A.    Disputed Claims Reserve

The Reorganized Debtor or Plan Administrator, as applicable, will withhold from the property that would otherwise be distributed to holders of Claims within a given Class an amount sufficient to be distributed on account of Claims that are not Allowed Claims within that Class as of the Effective Date, and shall place such withheld property in a Disputed Claims Reserve, which thereafter will be retained and administered by the Reorganized Debtor or Plan Administrator, as applicable.

### B.    Resolution of Disputed Claims

The Reorganized Debtor or Plan Administrator, as applicable, shall have the right to make and file objections to Claims in the Bankruptcy Court.  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, all Disputed Claims shall be subject to the exclusive jurisdiction of the Bankruptcy Court.

-38-

### C.    Objection Deadline

All objections to Disputed Claims shall be filed no later than the Claims Objection Bar Date, unless otherwise ordered by the Bankruptcy Court after notice and a hearing, with notice only to those parties entitled to notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

### D.    Estimation of Claims

At any time, Reorganized Debtor or Plan Administrator, as applicable, may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Reorganized Debtor or Plan Administrator, as applicable, have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the Claim, the Reorganized Debtor or Plan Administrator, as applicable, may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

### E.    No Distributions Pending Allowance

Notwithstanding any other provision in the Plan, if any portion of a Claim is disputed, no payment or Distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.  Upon allowance, a holder of the Allowed Disputed Claim shall receive any Distributions that would have been made up to the date of allowance to such holder under the Plan had the Disputed Claim been allowed on the Effective Date.

### F.    Resolution of Claims

On and after the Effective Date, the Reorganized Debtor or Plan Administrator, as applicable, shall have the authority to compromise, settle, otherwise resolve or withdraw any objections to Claims, and to compromise, settle, or otherwise resolve any Disputed Claims without approval of the Bankruptcy Court.

**ARTICLE VIII.**
**<u>TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>**

-39-

8696514

### A.    General Treatment:  Rejected if not Previously Assumed

Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, upon the Effective Date, all executory contracts and unexpired leases that exist between the Debtor and any Person or Entity shall be deemed rejected by the Debtor, except for any executory contract or unexpired lease (i) that has been assumed or rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (ii) as to which a motion for approval of the assumption of such executory contract or unexpired lease has been filed and served prior to the Effective Date, or (iii) that is specifically designated as a contract to be assumed on the attached Schedule of Assumed Executory Contracts and Unexpired Leases; *provided, however*, that the Debtor reserves the right, on or prior to the Confirmation Date, to amend the Schedule of Assumed Executory Contracts and Unexpired Leases to delete any executory contract or Unexpired Lease therefrom, or add any executory contract, in which event such executory contract(s) shall be deemed to be, respectively, either rejected or assumed as of the Effective Date.  Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of such assumption or rejection pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption or rejection is in the best interests of the Debtor, the Reorganized Debtor, the Estate, and all parties in interest in the Chapter 11 Case.

### B.    Bar to Claims Arising from Rejection, Termination or Expiration

Claims created by the rejection of executory contracts or unexpired leases (including, without limitation, the rejection provided in Article VIII. A herein ("General Treatment; Rejected if not Previously Assumed") or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date must be filed with the Bankruptcy Court and served on the Reorganized Debtor or Plan Administrator, as applicable, no later than thirty (30) days after (a) the *date of the entry of any order of the Bankruptcy Court authorizing rejection*, with respect to any executory contract or unexpired lease rejected by the Debtor or otherwise pertaining to such order, or (b) *the Confirmation Date*, with respect to any executory contract or unexpired lease that is deemed rejected pursuant to VIII. A hereof ("General Treatment; Rejected if not Previously Assumed"). Any rejection claim for which a proof of claim is not filed and served within the time provided herein will be forever barred from assertion and shall not be enforceable against the Debtor, or the Estate, assets, properties, or interests in property, or the Reorganized Debtor, or the Estate, assets, properties, or interests in property.  Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtor or the Reorganized Debtor of any objections to such Claim if asserted.

### C.    Assumption of Executory Contracts and Unexpired Leases

(1)    Assumption of Executory Contracts and Unexpired Leases; Schedule of Assumed Executory Contracts and Unexpired Leases.  On the Effective Date, the Debtor will assume all of

-40-

the executory contracts and unexpired leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases attached as an Exhibit to the Disclosure Statement and/or the Plan Supplement.  With respect to the executory contracts and unexpired leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases, the Debtor will designate a proposed Cure on the Schedule of Assumed Executory Contracts and Unexpired Leases.  Unless subject to separate motion and order of the Bankruptcy Court, the Confirmation Order will constitute an order of the Bankruptcy Court approving assumption of all of the executory contracts and unexpired leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases attached to the Plan Supplement pursuant to sections 365(a) and 1123 of the Bankruptcy Code and the listed amount of Cure Claims.

(2) <u>Modifications, Amendments, Supplements, Restatements, or Other Agreements</u>. Unless otherwise provided in the Plan, each executory contract or unexpired lease that is assumed pursuant to the Plan will include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated, or is rejected or repudiated pursuant to the Plan or separate motion and Final Order of the Bankruptcy Court.

(3) <u>Modification of the Schedule of Assumed Executory Contracts and Unexpired Leases</u>.  The Schedule of Assumed Executory Contracts and Unexpired Leases may be modified by the Debtor to add or delete contracts and leases up to three (3) days prior to the scheduled Confirmation Hearing.

(4) <u>Proof of Claim Based on Executory Contracts or Unexpired Leases that Have Been Assumed</u>.  Any and all proofs of claim relating to executory contracts or unexpired leases that have been assumed in the Chapter 11 Case will be deemed amended and superseded by the amount of Cure Claim identified in the Plan, the Confirmation Order or other order of the Bankruptcy Court authorizing assumption of executory contracts to the Debtor or the Reorganized Debtor.

(5) <u>Cure of Defaults for Assumed Executory Contracts and Unexpired Leases</u>.  With respect to each of the executory contracts or unexpired leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases, the Debtor will designate a proposed Cure and the assumption or assumption and assignment of such executory contract or unexpired lease will be conditioned on the disposition of all issues with respect to Cure.  All Allowed Cure Claims will be satisfied by the Debtor (i) by payment of the Cure in Cash, or (ii) on such other terms as may be either ordered by the Bankruptcy Court or agreed by the Debtor and the applicable contract counter-party without any further notice to or action, order, or approval of the Bankruptcy Court. Any provisions or terms of the Debtor's executory contracts or unexpired leases to be assumed and assigned pursuant to the Plan that are, or may be, alleged to be in default, shall be satisfied solely by the Cure, or by an agreed-upon waiver of the Cure.

-41-

(6)      Confirmation Order.  Entry of the Confirmation Order will constitute a finding of adequate assurance of future performance by the Reorganized Debtor within the meaning of section 365 of the Bankruptcy Code.  Any objections relating to adequate assurance of future performance, or any other matters relating to the assumption and assignment of executory contracts and unexpired leases (other than Cure Claim disputes) must be asserted as an objection to confirmation of the Plan.  Assumption of any executory contract or unexpired lease pursuant to the Confirmation Order or other order of the Bankruptcy Court will limit the Claims of any such contract counter-party to the (i) Allowed Cure Claim and (ii) Claims for ongoing performance under the unexpired lease or executory contract by Reorganized Debtor pursuant to section 365(k) of the Bankruptcy Code.

> **D.      Indemnification and Reimbursement.**

Subject to the occurrence of the Effective Date, all Allowed Claims against the Debtor for indemnification, defense, reimbursement, or limitation of liability of current or former directors, officers, or employees of the Debtor against any Claims, costs, liabilities or causes of action as provided in the Debtor's operating agreement, bylaws, other organizational documents, or applicable law, shall, to the extent such indemnification, defense, reimbursement, or limitation is owed in connection with one or more events or omissions occurring before the Petition Date, be (i) paid only to the extent of any applicable insurance coverage, and (ii) to the extent a proof of Claim has been timely filed and is Allowed, be treated as Subordinated Claims to the extent such Claims are not covered by any applicable insurance, including deductibles.  Nothing contained in the Plan shall affect the rights of directors, officers or employees under any insurance policy or coverage with respect to such Claims, costs, liabilities or Causes of Action or limit the rights of the Debtor or the Debtor' Estate to object to or otherwise contest or challenge Claims or rights asserted by any current or former officer, director or employee of the Debtor.

> **ARTICLE IX.**
> **CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE**

> **A.      Conditions Precedent to the Effective Date.**

The following are conditions precedent to the Effective Date that must be satisfied or waived:

(1)      The Court shall have entered the Confirmation Order in form and substance acceptable to the Debtor and Travelers confirming and approving the Plan in all respects, and the Confirmation Order shall have become a Final Order.

(2)      There shall be no stay or injunction in effect with respect to the Confirmation Order, which such Confirmation Order shall contain approval of the releases provided for herein.

(3)      The Plan Documents shall be in a form and substance reasonably acceptable to the Debtor, and have been duly executed and delivered; *provided, however*, that no party to any

-42-

such agreements and instruments may unreasonably withhold its execution and delivery of such documents to prevent this condition precedent from occurring.

### B. Waiver

Notwithstanding the foregoing conditions in Article IX.A, the Debtor reserves, the right to waive the occurrence of or modify any condition precedent subject only to the consent of Travelers. Any such written waiver of a condition precedent set forth in this Article IX.B may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan. Any actions required to be taken on the Effective Date or Confirmation Date (as applicable) shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

### ARTICLE X.
### EFFECT OF CONFIRMATION; INDEMNIFICATION,
### RELEASE, INJUNCTIVE AND RELATED PROVISIONS

### A. Compromise and Settlement

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Equity Interests. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and Equity Interests, as well as a finding by the Bankruptcy Court that such compromises or settlements are fair, equitable, reasonable and in the best interests of the Debtor, the Estate and holders of Claims and Equity Interests.

### B. Vesting of Assets

Upon the Effective Date, pursuant to section 1141(b) and (c) of the Bankruptcy Code, all property of the Debtor (other than Available Avoidance Actions) shall vest in the Reorganized Debtor free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided in the Plan or the Confirmation Order. From and after the Effective Date, the Reorganized Debtor may operate the Debtor's business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code. In the event that the Reorganized Debtor's chapter 11 case is converted to a case under chapter 7 for any reason, any property held by either the Debtor or the Reorganized Debtor at any time, other than property that already has been distributed under this Plan prior to conversion of the case from chapter 11 to chapter 7, shall revest in the Debtor. Available Avoidance Actions shall revest in the Plan Administrator.

### C.    Title to Assets; Discharge of Liability

Except as otherwise provided in the Plan including, but not limited to the limitation set forth in Article X.B, on the Effective Date, title to all assets and properties and interests in property dealt with by the Plan shall vest in the Reorganized Debtor free and clear of all Claims, Equity Interests, Liens, encumbrances, charges, and other interests, and the Confirmation Order shall be a judicial determination of discharge of the liabilities of the Debtor arising prior to the Effective Date, except as may be otherwise provided in the Plan.

### D.    Binding Effect

Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind the Debtor, the Reorganized Debtor, and any holder of a Claim against, or Equity Interest in, the Debtor and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

### E.    Discharge of Claims

Except as provided herein, the rights afforded in the Plan and the payments and Distributions to be made hereunder shall discharge all existing debts and Claims, of any kind, nature, or description whatsoever against or in the Debtor or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code.  Except as provided herein, upon the Effective Date, all existing Claims against the Debtor in the Debtor shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Equity Interests shall be precluded and enjoined from asserting against the Reorganized Debtor, their respective successors or assignees, or any of their respective assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim or proof of equity interest, and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date.  Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or Equity Interest in the Debtor. Nothing in this Article X.E should be interpreted as a discharge of the Debtor' or Reorganized Debtor' rights or obligations under the Plan.

### F.    Discharge of the Debtor

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in the Confirmation Order, the Distributions and rights that are provided in the Plan will be in complete satisfaction, discharge, and release, of any and all Claims, whether known or unknown, against the Debtor or Reorganized Debtor or any of their assets or properties, regardless of whether the property has been distributed or retained pursuant to the Plan.  Without limiting the generality of the foregoing, the Debtor or Reorganized Debtor will be discharged from any and all Claims and debts of the kind specified in sections 502(g), 502(h) of

-44-

8696514

502(i) of the Bankruptcy Code, in each case whether or not (a) a proof of claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim is allowed under section 502 of the Bankruptcy Code, or (c) the holder of such a Claim accepted the Plan.  Except as otherwise provided in the Plan, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor arising before the Effective Date.  Under section 524 of the Bankruptcy Code, the discharge granted under this section shall avoid any judgment against the Debtor at any time obtained (to the extent it relates to a discharged Claim), and operates as an injunction against the prosecution of any action against the Debtor or the Estate (to the extent such action relates to a discharged claim).  Nothing in this Article X.F should be interpreted as a discharge of the Debtor's or Reorganized Debtor's rights or obligations under the Plan.

### G.    Releases

(1)    **Releases by the Debtor and the Estate.  Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for the good and valuable consideration provided by each of the Released Parties, each of the Debtor and its current and former Affiliates and Representatives and the Estate shall be deemed to have provided a full, complete, unconditional and irrevocable release to the Released Parties (and each such Released Party so released shall be deemed released by the Debtor and their current and former Affiliates and Representatives and the Estate, from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether accrued or unaccrued, whether known or unknown, foreseen or unforeseen, existing before the Effective Date, as of the Effective Date or arising thereafter, in law, at equity, whether for tort, contract, violations of statutes (including but not limited to the federal or state securities laws), or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtor, including, without limitation, those that the Debtor would have been legally entitled to assert or that any holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for or on behalf of the Debtor or the Estate, including those in any way related to the Chapter 11 Case or the Plan; *provided, however*, that the foregoing release shall not prohibit the Debtor, the Reorganized Debtor or the Estate from asserting any and all defenses and counterclaims in respect of any Disputed Claim (exclusive of any defenses and counterclaims with respect to Disputed Claims that would or may adversely affect Travelers or BHSI) asserted by any Released Parties; provided further that nothing contained in the foregoing provision or elsewhere in the Plan or Confirmation Order shall be construed as a release of any claims against any Released Party resulting from an act or omission determined by a final order of a court of competent jurisdiction to have constituted willful misconduct, fraud or gross negligence, provided that each such Released Party shall be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, its actions or inactions.**

(2)    **Releases by Holders of Claims.  To the fullest extent permitted by applicable law, as of the Effective Date, each Person, other than the Debtor, who votes to accept the Plan or accepts a Distribution under the Plan, or is deemed to accept the Plan, or abstains**

-45-

from voting on the Plan, shall be deemed to fully, completely, unconditionally, irrevocably, and forever release the Released Parties of and from any and all Claims and Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether accrued or unaccrued, whether known or unknown, foreseen or unforeseen, existing before the Effective Date, as of the Effective Date or arising thereafter, in law, at equity, whether for tort, contract, violations of statutes (including but not limited to the federal or state securities laws), or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtor and its current and former Affiliates and Representatives, whether direct, derivative, accrued or unaccrued, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, in law, equity or otherwise; provided that nothing contained in the foregoing provision or elsewhere in the Plan or Confirmation Order shall be construed as a release of any claims against any Released Party resulting from an act or omission determined by a final order of a court of competent jurisdiction to have constituted willful misconduct, fraud or gross negligence, provided that each such Released Party shall be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, its actions or inactions; *provided, however* that such releases shall not affect any rights of any non-Debtor Person or Entity with respect to any written personal or cross-corporate guarantees of the Debtor's or non-Debtor Affiliate's obligations executed by such non-Debtor Person or Entity to and in favor of any Party or Entity in connection with the Debtor's or non-Debtor Affiliate's prepetition operations; *provided further, however,* that nothing in this Article X.G.2 should be interpreted as a release of the Released Parties' or Reorganized Debtor's rights or obligations under the Plan. NOTWITHSTANDING THE FORGOING, TRAVELERS AND BHSI ARE NOT RELEASING, AND THE FORGOING WILL NOT CONSTITUTE A RELEASE BY TRAVELERS OR BHSI OF ANY CLAIMS AND/OR CAUSES OF ACTION, AND ANY OTHER DEBT, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, ACTIONS, REMEDIES, AND LIABILITIES WHATSOEVER, WHETHER ACCRUED OR UNACCRUED, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN EXISTING BEFORE THE EFFECTIVE DATE AGAINST BHSI, NEW EQUITY, OR ANY PERSON OTHER THAN THE DEBTOR. NOTWITHSTANDING ANY PROVISION OF THIS PLAN, ALL RIGHTS, CLAIMS AND DEFENSES OF TRAVELERS AND BHSI AGAINST NON-DEBTORS, INCLUDING BUT NOT LIMITED TO, ALL RIGHTS AND CLAIMS ARISING UNDER ALL APPLICABLE INDEMNITY AGREEMENTS, ARE RESERVED AND ARE UNAFFECTED BY THE PLAN.

(3)     Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in this Article X.G.3 pursuant to Bankruptcy Rule 9019 and its finding that they are: (a) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and Causes of Action released by this Plan; (b) in the best interests of the Debtor and all holders of Claims; (c) fair, equitable and reasonable; (d) approved after due notice and opportunity for hearing; and (e) a bar to the assertion of any Claim or Cause of Action thereby released.

-46-

**H.    Exculpation**

**Notwithstanding anything contained herein the contrary, the Released Parties shall neither have nor incur any liability relating to the Chapter 11 Case to any Entity for any and all Claims and Causes of Action arising after the Petition Date and through the Effective Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan or distributing property thereunder, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other post-petition act taken or omitted to be taken in connection with the Chapter 11 Case; *provided, however*, that the foregoing provisions of this Article X.H shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence, fraud or willful misconduct.    Notwithstanding anything contained in this Article X.H to the contrary, nothing shall restrict the United States Securities and Exchange Commission from bringing any regulatory or enforcement action for violation of the federal securities laws respecting any parties otherwise protected thereunder.**

**I.    Government Carve-Out**

Except for the Claims described in Articles II and III or other Final Order of the Bankruptcy Court that are discharged and released under this Plan, nothing in the Plan or the Confirmation Order shall (i) effect a release of any other claim by the United States Government or any of its agencies or any state and local authority whatsoever against the Released Parties, including without limitation any claim arising under the Internal Revenue Code, securities laws, the environmental laws or any criminal laws of the United States or any state and local authority, (ii) enjoin the United States Government or any of its agencies or any state and local authority whatsoever from bringing any claim, suit, action or other proceedings against the Released Parties asserting any other liability, including without limitation any claim, suit or action arising under the Internal Revenue Code, securities laws, environmental laws or any criminal laws of the United States or any state or local authority, and (iii) exculpate any of the Released Parties from any other liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, securities laws, environmental laws or any criminal laws of the United States or any state and local authority.

**J.    Surety Carve-Out**

**Nothing in the Plan or the Confirmation Order shall (i) effect a release of any claim by the Travelers or BHSI or any of their affiliates, against any entity that is not the Debtor, including, but not limited to, any non-debtor affiliates of the Debtor, or (ii) enjoin Travelers or BHSI, or any of their affiliates, from bringing any claim, suit, action or other proceedings against any entity that is not the Debtor, or (iii) exculpate any entity that is not the Debtor from any claims arising under any applicable bond or indemnity agreement.**

-47-

### K.    Limitations on Exculpation and Releases

Nothing in Article X.G ("Releases") or Article X.H ("Exculpation") herein shall (i) be construed to release or exculpate any person from, or require indemnification of any Person against losses arising from, the fraud, or criminal conduct.

### L.    Injunction

Except as otherwise expressly provided for in the Plan, from and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtor, the Reorganized Debtor, the Estate, and their successors and assigns, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim or Equity Interest, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or satisfied or to be released or satisfied pursuant to the Plan or the Confirmation Order.

Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Debtor, the Reorganized Debtor, the Estate, and their successors and assigns and their assets and properties, any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, solely to the extent that (a) such Claims or Equity Interests have been released or satisfied pursuant to the Plan or the Confirmation Order or (b) such Claims, Equity Interests, actions or assertions of Liens relate to property that will be distributed pursuant to the Plan or the Confirmation Order.

The rights afforded in the Plan and the treatment of all Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction of Claims and Equity Interests against the Debtor or any of their assets or properties solely to the extent that (a) such Claims or Equity Interests have been released or satisfied pursuant to the Plan or the Confirmation Order or (b) such Claims, Equity Interests, actions or assertions of Liens relate to property that will be distributed pursuant to the Plan or the Confirmation Order.  On the Effective Date, all such Claims against, and Equity Interests in, the Debtor shall be satisfied and released in full.

Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Persons and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest satisfied and released pursuant to the Plan or Confirmation Order, from:

(i)         commencing or continuing in any manner any action or other proceeding of any kind against the Debtor, the Reorganized Debtor, the Estate and their successors and assigns and their assets and properties;

(ii)            enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Debtor, the Reorganized Debtor, the Estate and their successors and assigns and their assets and properties;

(iii)           creating, perfecting or enforcing any encumbrance of any kind against the Debtor, the Reorganized Debtor, the Estate and their successors and assigns and their assets and properties; and

(iv)           commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or Cause of Action released or settled hereunder).

**M.      Release of Liens**

Except as otherwise provided herein or in any contract, instrument, release or other agreement or document created, or continuing in effect, pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against property of the Estate distributed under the Plan shall be fully released and discharged and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interest shall revert, as applicable, to the Debtor or Reorganized Debtor.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Debtor, the Reorganized Debtor, and the Plan as is legally permissible, including, without limitation, jurisdiction to:

(i)      allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim against the Debtor, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims;

(ii)     grant, deny or otherwise resolve any and all applications of Professionals or Persons retained in the Chapter 11 Cases by the Debtor for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

(iii)    resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired leases to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

-49-

(iv)    ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan, including by resolving any disputes regarding, as applicable, the Debtor's or Reorganized Debtor's entitlement to recover assets held by third parties;

(v)    decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date;

(vi)    enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan or the Disclosure Statement;

(vii)    resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(viii)    issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

(ix)    enforce Articles within this Plan;

(x)    resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in Article X, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

(xi)    enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

(xii)    resolve any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

(xiii)    enter an order and a Final Decree closing the Chapter 11 Case.

-50-

8696514

# ARTICLE XII.
## MISCELLANEOUS PROVISIONS

### A.    Liquidation Event

The Reorganized Debtor shall not consummate a Liquidation Event without the prior written consent of Travelers, which consent shall not be unreasonably withheld.  Upon any such occurrence, then in any one or more of said cases, Debtor will give written notice to Travelers of the date on which any such Liquidation Event is scheduled to take place.  Such written notice will be given at least thirty (30) days prior to the action in question.

### B.    Modification of Plan

Subject to the limitations contained in the Plan, the Debtor reserves the right in its sole discretion, in accordance with the Bankruptcy Code and the Bankruptcy Rules to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; *provided, however*, that any pre-Confirmation Date amendments shall not materially or adversely affect the interests, rights or treatment of any Allowed Claims or Equity Interests under the Plan; and after the entry of the Confirmation Order, the Reorganized Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

### C.    Revocation of Plan

The Debtor reserves the right in its sole discretion to revoke or withdraw the Plan prior to the entry of the Confirmation Order, and to file subsequent chapter 11 plans.  If the Debtor revokes or withdraws the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission of any sort by the Debtor or any other Entity.

### D.    Binding Effect

On the Effective Date, the provisions herein shall bind any holder of a Claim against, or Equity Interest in, the Debtor and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under the Plan, whether or not such holder has accepted the Plan and whether or not such holder is entitled to a Distribution under the Plan.

8696514

**E.      Successors and Assigns**

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**F.      Governing Law**

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, unless otherwise stated, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida without giving effect to the principles of conflict of laws thereof.

**G.      Reservation of Rights**

The Plan shall have no force or effect unless and until the Effective Date occurs.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtor or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtor with respect to the holders of Claims or Equity Interests or other parties-in-interest; or (2) any holder of a Claim or other party-in-interest prior to the Effective Date.

**H.      Title 1146 Exemption**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

**I.      Section 1125(e) Good Faith Compliance**

Confirmation of the Plan shall act as a finding by the Court that the Debtor and each of its Representatives have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

**J.      Further Assurances**

The Debtor, all holders of Claims receiving Distributions hereunder and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

-52-

8696514

### K.    Service of Documents

Any pleading, notice or other document required herein to be served on or delivered to the Debtor shall be sent by both email and first class, certified U.S. mail, postage prepaid as follows:

**To the Debtor:**

> Jorge Munilla, President
> Magnum Construction Management, LLC
> 6201 S.W. 70 Street
> Second Floor
> Miami, FL 33143
> jm@mcm-us.com
>
> With a copy to (which shall not constitute notice)
>
> Berger Singerman LLP
> 1450 Brickell Avenue
> Suite 1900
> Miami, Florida 33131
> Attn: Jordi Guso
> Telephone:  305-714-4375
> Email:  jguso@bergersingerman.com

### L.    Filing of Additional Documents

On or before the Effective Date, the Debtor may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

### M.    No Stay of Confirmation Order

The Debtor shall request that the Court waive stay of enforcement of the Confirmation Order otherwise applicable, including pursuant to Federal Rules of Bankruptcy Procedure 3020(e), 6004(h) and 7062.

### N.    Bankruptcy Rule 9019 Request; Impact

The Plan, including the Plan Supplement or other Plan Document, may provide for one or more compromises or settlements.  Pursuant to Bankruptcy Rule 9019, the Debtor hereby requests approval of all compromises and settlements included in the Plan, and entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of any such compromise or settlement.

8696514

Dated:  March 4, 2019

Magnum Construction Management, LLC.

By:    /s/ Jorge Munilla
      Name:  Jorge Munilla
      Title:   President of the Debtor


BERGER SINGERMAN LLP
*Counsel for Debtor and Debtor-in-Possession*
1450 Brickell Avenue, Suite 1900
Miami, FL  33131
Tel:  (305) 755-9500
Fax:  (305) 714-4340

By:    /s/   Jordi Guso
      Jordi Guso
      Florida Bar No. 0863580
      jguso@bergersingerman.com
      Paul A. Avron
      Florida Bar No. 0050814
      pavron@bergersingerman.com

-54-

8696514

**EXHIBIT 1**

**(BHSI BONDED CONTRACTS)**

| PROJECT | DESCRIPTION |
|---|---|
| E4S38 A1A Bridge Rehab | Construction of Roadway and Bridge Rehab for FDOT |
| Florida City Elementary | Construction/Renovation of Dade County Public School |
| Joseph Caleb Center | Construction/Renovation of Dade County Community Center |
| Reagan-Doral | Construction/Renovation of Dade County Public School |
| Grove Bay Parking | Construction of Parking Garage for City of Miami |
| FM2181 Denton County | Construction of Roadway Work for TXDOT[4] |
| Lake Sharon Drive | Construction of Paving & Drainage for City of Corinth |
| Love Field Glide Slope | Construction of Paving Work for City of Dallas |

---

[4] On January 25, 2019, the Texas Department of Transportation delivered a notice terminating its contract with the Debtor.  The Debtor and BHSI are disputing the termination.

2

1351430

8696514

**EXHIBIT 2**

**(INSURANCE POLICIES)**

- GIC Policy No. CGS740951901
- XLIA Policy No. US00072885LI17A
- IHIC Policy No. CEO744659901 .
- Excess Liability Policy No. ECO (18)58267898

2

**EXHIBIT 3**

**(TRAVELERS BONDED CONTRACTS)**

| PROJECT | DESCRIPTION |
|---|---|
| GTMO WT Sampson | Construction of School in GTMO, Cuba for NAVFAC |
| POM Terminal F | Construction of Seaport Terminal for the Port of Miami |
| T4433 Broward Blvd. | Construction of Roadway Work for FDOT |
| DNT – Parker Rd to SH 121 | Construction of Roadway Work for NTTA |
| Miramar Readiness Ctr | Construction of Readiness Center for US National Guard |
| Madie Ives K-8 | Construction/Renovation of Dade County Public School |
| Twin Lakes Elem | Construction/Renovation of Dade County Public School |
| OpaLocka 54FM | Construction/Installation of Water Main Pipe for MDWASD |
| W Homestead K-8 | Construction/Renovation of Dade County Public School |
| C-111 Detention Area | Construction of Levee for Army Corps of Engineer |
| Port Everglades | Construction of Seawall for Broward County |
| MCC-8-10 | Construction/Renovation of Misc. work for Miami Dade Aviation |
| Liberty Village | Construction of Affordable Housing Multifamily Building |
| NAS Meridian Dining Facility | Construction/Renovation of Dining Facility for NAVFAC |
| TXDOT – FM 423 | Construction of Roadway Work for TXDOT |
| Doral Police Station | Construction of Police Station in Doral |
| Taxieway Bravo Rehab at DLF | Construction of Paving Work for City of Dallas |
| TXDOT – US75 | Construction of Roadway Work for TXDOT |
| FM544 | Construction of Roadway Work for TXDOT |
| FLL Terminal 4 East Expansion | Construction of Airport Terminal in Broward County |
| SFWMD Lakeside Ranch | Construction of Storm Water Treatment Area for SFWMD |
| Heft II | Construction of Roadway Work for FDOT |
| FIU Bridge | Construction of Pedestrian Bridge at FIU |

1351430

8696514